## ADAM DENMEAD *vs.* THOMAS COBURN.

The defendant had a mill-race flowing under a street, in the city of Baltimore, which the city authorities determined to fill up and extend, so that it became necessary this race should be arched over under the bed of the street, and the proper officer of the city made a contract with the plaintiff to build the arch, for a specified sum. The same officer afterwards entered into an arrangement, with the defendant, by which the sum to be paid the plaintiff for building the arch should be allowed the defendant, he agreeing to have an arch of a superior character built, and to be liable for any additional sum it might cost, and the plaintiff was to do the work. The plaintiff and defendant then entered into *a written contract*, by which the former agreed to build the arch as therein specified, for the latter, at a certain rate. Whilst the arch was in process of construction a contractor with the city was engaged in filling up the street, and over him the defendant had no control, he being subject only to the city commissioner. Before the arch was completed that portion of it which was done, fell in, either from bad materials and workmanship, or from the manner in which the contractor for filling up the street caused the earth used for that purpose to be "dumped" down against the arch. After notice to the plaintiff that he had not fulfilled his contract, the defendant caused the arch to be rebuilt. The plaintiff then sued the defendant in an action of *indebitatus assumpsit*, for work and labor in building this arch and for *extra work* and materials, the declaration containing no special count on the contract. HELD:

1st. That the plaintiff cannot recover in *this action* for the work done on the arch, there being no evidence that the work contracted for was completed, *or* of the abandonment of the contract, *or* of any act of the defendant by which the plaintiff was interfered with in the prosecution of his work.

2nd. That if his work was destroyed by the acts of the contractor for filling up the street, without any fault of the defendant, the plaintiff's remedy, if, under the circumstances, he has any against any party, is against such contractor, or the city, if the contractor was its agent.

3rd. Nor can the plaintiff recover for any extra work, there being no sufficient proof to justify the jury in inferring any assent on the part of the defendant to any such work, or departure from the terms of the contract; the contract bound the plaintiff to build an arch suitable for the purposes intended; and, therefore, imposed upon him the obligation to do all indispensable to that end.

4th. But the plaintiff is entitled to recover the value of any materials belonging to him which were used by the defendant in rebuilding the arch.

Where there is a special contract the plaintiff cannot recover in an action of *indebitatus assumpsit* for work and labor, unless the work under the contract was fully performed and accepted by the defendant, or the contract was abandoned by mutual consent, or the fulfilment of it prevented by some act of the defendant.

A prayer "that the plaintiff is entitled to recover such sum as the jury shall believe from the evidence to be the value of the materials belonging to him *and used* by the defendant in the new arch," is erroneous, because it *assumes* the fact that such materials were so used.

APPEAL from the Superior Court of Baltimore city.

*Assumpsit* brought on the 2nd of March 1854, by the appellee against the appellant. The declaration alleges that the defendant was indebted to the plaintiff in the sum of $963.71, for work and labor done and materials furnished. It also contains counts for goods sold, money had and received, upon an account stated, and for sundry matters properly chargeable in account, as by a particular account filed, appears. Plea *non assumpsit*.

*Exception.* The plaintiff offered in evidence the following written contract, signed by himself and A. and W. Denmead & Son: "Baltimore, November 22nd, 1852. Memorandum made this day between A. & W. Denmead & Son, on the one part and Thomas Coburn of the other part, all of the city of Baltimore, and State of Maryland. Thomas Coburn agrees to put up the stone arch under Eager street and across our race, the side walls to be three feet thick, and arch to be span sixteen feet semi-arch, the side wall to be laid dry and the arch with good mortar, for six dollars per foot running measure. A. and W. Denmead & Son to do all the digging, and Thomas Coburn to furnish all the labor and materials for said arch, including the braces for centering, the arch to be well backed up. Thomas Coburn also agrees to give A. and W. Denmead & Son, one dollar per perch for all the old stone taken out of the race, which Thomas Coburn agrees is thirty one perches."

The bill of particulars consists of two items, 1st, 124 feet length of arch built by the plaintiff at $6.50 per foot, making $806. 2nd, "136 $\frac{70}{100}$ perches stone, in one foot high of abutments, and in two wing walls at $2.25 per perch," making $307.71. It then allows a credit of $150, leaving due $963.71. The other evidence in the case is sufficiently stated in the opinion of this court. Upon all the evidence the plaintiff asked the following instructions to the jury.

Denmead *vs.* Coburn.

1st. If the jury shall believe, from the evidence, that the arch built by the plaintiff fell in consequence of the manner in which the street was filled in above it, and not because of any defect of materials or workmanship, then the plaintiff is entitled to recover the sum stipulated in the contract.

2nd. If the jury shall believe from the evidence that the increased height of the abutments, and the wing-walls, not provided for in the contract, were built for the advantage of the defendants, and that they knew of the same while the work was being done, and made no objection thereto, the plaintiff is then entitled to recover such sum as the jury shall believe to be reasonable compensation for such extra work.

3rd. That the plaintiff is entitled to recover such sum as the jury shall believe, from the evidence, to be the value of the materials belonging to him and used by the defendants in the new arch, less such payment as has been made to him by the defendants on account.

The defendants asked the following instructions:

1st. That the second item in the bill of particulars submitted by the plaintiff, is not embraced in the written contract offered in evidence by the plaintiff.

2nd. If the jury shall be satisfied, from the evidence, that the whole work stipulated for in the written contract offered in evidence by the plaintiff was not completed by the plaintiff, then the plaintiff is not entitled to recover in this action.

3rd. If the jury shall find from the evidence that the stone arch and side walls, mentioned in said contract, were put up by the plaintiff, but that said arch, as stated in the evidence, fell down in part, and for the residue had to be taken down, then the plaintiff is not entitled to recover, if the jury shall be satisfied from the proof that the partial falling of said arch, and the taking down of the rest of it, were, to any extent, caused by defective material in said arch or side walls, or the defective workmanship of either, or for want of the said arch being well backed up according to said contract.

4th. If the jury shall be satisfied from the evidence that the stone arch and side walls, mentioned in said contract,

were put up by the plaintiff, and that the said arch fell, in part, and for the residue had to be taken down, through no defect in the plaintiff's work, or materials, but because of the injury to the same occasioned by the manner in which, according to the plaintiff's evidence, the earth was dumped on said arch in the construction of Eager street, then the plaintiff is not entitled to recover; if the jury shall further find from the evidence, that such injury was done while said work was in course of construction and before it was completed.

The court (LEE, J.) granted all the plaintiff's prayers and all of the defendant's except the fourth, which was refused, and to the granting of the plaintiff's prayers and the refusal of his fourth prayer, the defendant excepted. The verdict was in favor of the plaintiff for $1073.72, and from the judgment thereon the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Bernard Carter* and *J. M. Campbell,* for the appellant, argued:

1st. The plaintiff's first prayer should not have been granted, because it assumes the existence and execution of the contract, according to which the jury were directed to ascertain the amount due to the plaintiff, and also that the arch was in fact built, instead of leaving the jury to find these facts. 4 *Md. Rep.,* 252, *Balto. & Susq. R. R. Co. vs. Woodruff. Ibid.,* 476, *Ellicott vs. Peterson.* 3 *Md. Rep.,* 162, *Gaither vs. Martin.*

2nd. The plaintiff having declared in *indebitatus assumpsit,* for work and labor, and on the common counts, and not on the special contract offered in evidence, cannot recover in this action, unless the evidence shows (which it altogether and entirely fails to show) either, 1st, that the contract has been fully executed and performed, and the work therein contracted for completed; or, 2nd, that a portion of the work having been performed, the contract was abandoned by mutual consent, or its completion prevented by some act of the

defendant.   16 *Wend.*, 632, *Mead vs. Degolyer.*   7 *Md. Rep.*, 298, *Balto. & Ohio R. R. Co. vs. Resley.*   14 *Johns.*, 326, *Clark vs. Smith.*   4 *Md. Rep.*, 491, *Ellicott vs. Peterson.*   4 *Cowen*, 564, *Jewell vs. Schroeppel.*   19 *Pick.*, 496, *Baker vs. Corey.*   2 *Md. Rep.*, 57, *Bull vs. Schuberth.*   14 *Mass.*, 282, *Taft vs. Inhabitants of Montague.*   2 *Pen. & Watts*, 454, *Shaw vs. Turnpike Co.*   9 *Metcalf*, 577, *Moulton vs. Frask.*   3 *Taunt.*, 52, *Ellis vs. Hamlen.*   2 *East*, 145, *Hulle vs. Heightman.*      9 *Pet.*, 565, *Ches. & Ohio Canal Co. vs. Knapp.*

3rd.   If it be admitted that the fulfilment of the contract spoken of in the prayer, was prevented by an act of the defendant, then, in this action, the plaintiff could only recover for the work which he had done at the time the arch fell, and then only what the work done was actually worth; nor is the contract price conclusive evidence of the value of the work, whereas the theory of the prayer is that the plaintiff is entitled to recover for the *whole* work at the *contract* price.   9 *Gill*, 288, *Rodemer vs. Hazlehurst.*   15 *Queen's Bench Rep.*, 576, *Goodman vs. Pocock.*   2 *Crompton & Mees.*, 214, *Chapel vs. Hickes.*

4th.   The evidence shows that the plaintiff cannot maintain any action for the work done on the arch against the defendant; and, therefore, the judgment should be reversed *without procedendo.*   1st. He can maintain no action on the contract for the price of the work as agreed on in the contract, because he has never done that which alone entitles him to recover by virtue of the contract, that is—built the arch.   19 *Pick.*, 275, *Adams vs. Nichols.*   2 *Mass.*, 147, *Faxon vs. Mansfield.*   14 *Mass.*, 282, *Taft vs. Inhabitants of Montague.*   8 *Carr. & Payne*, 126, *Rees vs. Lines.*   2 *Pen. & Watts*, 454, *Shaw vs. Turnpike Co.*   2nd. No action can be maintained on the contract for a breach of it, because the defendant has committed no breach.   If the arch fell because of defective materials, or unskilful workmanship, the plaintiff has no one to blame but himself; if it fell in consequence of the ·manner in which the earth was thrown upon it, the corporation of Baltimore, or its agents, who committed the wrong, are those to whom the plaintiff must look; the defend-

ant is in no way responsible for their acts. 9 *Metcalf*, 579. What the defendant contracted to pay the plaintiff for was the building of an arch; this not having been done there is no liability on him, and he has no concern whose fault it is that it was not done, inasmuch as it was no fault of his; 3rd, nor can the plaintiff maintain any action on a *quantum meruit*. The ground of this action is *benefit conferred;* now, it is plain that the defendant so far from deriving any benefit from what was done by the plaintiff, was compelled to undo, at his own expense, what had been done. 1 *Camp.*, 38, *Farnsworth vs. Garrard.* 2 *Mass.*, 147, *Faxon vs. Mansfield.* 14 *Mass.*, 282, *Taft vs. Inhabitants of Mont.* 8 *Carr. & Payne*, 126, *Rees vs. Lynes.* 1 *Smith's Lead. Cases*, 44.

5th. The court erred in granting the plaintiff's second prayer. 1st, because it assumes the existence and execution of the contract spoken of, instead of leaving these facts to be found by the jury. 2nd, because there is no evidence to show that the abutments and wings spoken of in the prayer were built for the advantage of the defendant; and nothing being said about either in the contract, there is nothing to show that they were built any higher than the necessities of such an arch as the contract contemplated required; and, therefore, nothing upon which to base the claim of their being paid for as extra work. Nor is there any evidence that the defendant had any knowledge of the height of the abutments or wing walls, while they were being built, or at any other time, and no evidence as to whether he objected to them or not, nor any evidence as to what was reasonable compensation for such work.

6th. The court also erred in granting the plaintiff's third prayer. By granting the plaintiff's first prayer, the jury were instructed to allow the plaintiff the full sum stipulated in the contract, if they found the arch fell for the reason stated in that prayer. Such a recovery by the plaintiff clearly made the arch, and all its materials, the property of the defendant. By granting the plaintiff's third prayer the court directed the jury to *add* to the sum recovered in the first prayer such a sum as they *believed* was the value of the materials belonging to the plaintiff used by the defendant in the new arch; the defendant

was therefore held to pay for materials which were already his own. There is not a particle of evidence as to the value of these materials.

7th. For the reasons and upon the authorities already sufficiently set forth, the fourth prayer offered by the defendant, correctly stated the law applicable to this case and should have been granted.

*C. J. M. Gwinn,* and *John H. B. Latrobe,* for the appellee.

The cases referred to by the appellant, under his first point, do undoubtedly decide that a prayer is defective which *assumes a fact which ought to be found by the jury.* But it is to be considered whether, *in this particular case,* the first prayer of the plaintiff is liable to this objection. Its language is, "if the jury believe from the evidence that the arch built by the plaintiff fell." Now, what facts does this prayer leave to the jury? Can any one doubt that it leaves to the jury whether *any arch built by the plaintiff fell?* For it undoubtedly, in express terms, leaves the question of the *falling* of the arch to the jury, and it, therefore, leaves it to the jury to find the words of description by which that arch ought to be specially designated; that is to find that the arch referred to, *was the arch built by the plaintiff.* Nor does this prayer *assume the existence and execution of a contract* in such manner as to make it erroneous. The suit was not brought on any contract; it was on the contrary a suit on the common counts. The theory of the plaintiff being that the contract which led to the suit was in contemplation of law executed by him, he was at liberty on that theory to rely on the common counts. 1 *Chitty's Plead.,* 333; *Ridgeley vs. Crandall,* 4 *Md. Rep.,* 441. The contract, if one exists, is in such case, the mere measure of the claim sued for. Now if we are right in our supposition that the former part of this first prayer is correct, let us proceed still further. The jury could not find from the evidence that *the* arch built by the plaintiff fell, unless they found *the circumstances under which that arch was built.* The prayer must, therefore, receive its in-

terpretation from the evidence in the cause; and that evidence shows that the arch which was built, was built for the defendant, under the contract offered in evidence, which is a part of *the* evidence on which the prayer is based. When, therefore, the court instructed the jury that, if they believed from the evidence that the arch built by the plaintiff did not fall from any fault of the plaintiff, the plaintiff was entitled to recover the sum stipulated in the contract, the court did not assume to itself the finding of a contract, but adverted only to the inevitable conclusion, which followed from the preceding parts of the prayer. For as the jury could only find that the arch built by plaintiff fell, by recognizing the circumstances under which that arch was constructed, one of which circumstances was the contract, so the court instructed the jury finally that this circumstance, which the jury had thus been obliged to consider, was to be the rule of compensation.

It may be here remarked, however, that the objection to the structure of this prayer is one which ought to be repudiated by the Court of Appeals, even if the opinion of that court has been hitherto given in favor of objections of such a character.

The record of this case, shows that a certain memorandum of a written contract for the building of a stone arch, had been entered into between the appellant and the appellee. This contract was offered in evidence, and read to the jury. It was undoubtedly proof in the cause, received by the court, and as such considered by the jury. That contract provided for the construction of a stone arch, of certain proportions, and for the price which should be paid for it. The proof further received by the court and considered by the jury, related directly to the building of that arch under the contract, which the jury had been permitted to consider. And we are now told, although the record shows that the fact that the arch was built, was submitted to the jury, and although the fact that a contract to build that arch was proved and submitted to the jury, that the Court of Appeals ought to ignore these facts, so appearing, of record, and ought legally to as-

sume that the court below had invaded the province of the jury, had found for *itself* that an arch was built, and had found for *itself* that a contract existed. In a word, the Court of Appeals is asked to draw this inference in the face of the statement in one part of the record, that these facts were really submitted to the jury, because the judge of the inferior court, in another part of that record, does not *repeat* to the jury that *they* are to ascertain the truth or falsity of the matters of evidence, which he had already submitted to their decision.

We beg leave to call the attention of the court to one position. A trial at law is a continuous proceeding, each part of which maintains, connects and explains, every other. A bill of exceptions is, by statute, as much a constituent part of the record, in a civil cause, as are any of the pleadings. The facts stated in a bill of exceptions are as material a part of that bill as the instruction of the court. Would the court, upon the trial of a question of pleading, undertake to determine the sufficiency of a replication, without taking into consideration the plea to which it applied, or the declaration which gave meaning to the matters of the plea? Assuredly it would not, because, being parts of the same record, declaration, plea and replication explain each other. Why should a different rule be applied to a bill of exceptions? All of such a record should be taken to together. And while the instruction of the court may never assume a fact to have been proved, concerning which there was *no evidence* given to the jury, it may assume, *for the purpose of the instruction*, every fact which the bill of exceptions may show was proved. proved. *Boardman vs. Reed*, 6 *Pet.*, 344. *United States vs. Morgan*, 11 *How.*, 159. The true theory of an instruction by the court is, *that it presents hypotheses of facts*, and instructs the jury as to the conclusions of law from them. And it is submitted that, when the court in an instruction states a fact, *(which has been submitted to the jury,)* as a fact, it ought to be understood by the Court of Appeals as making a hypothetical statement, dependent on the belief of the jury of such fact.

Denmead *vs.* Coburn.

But independently of this view, it is to be observed that the law of this State does not determine that a court may not, on some occasions, *assume* that a fact exists, even if that fact has been a subject of proof to the jury.   If there is no proof in a cause to contradict a fact, which has been given in evidence to the jury, or no proof, from which a rational mind could make any inference of fact at variance with what has been proved to the jury, the inferior court is justified in treating the fact in proof as a *concessum,* and in so doing would not be considered as invading the province of the jury. *M'Elderry vs. Flannagan,* 1 *H. & G.,* 321.   *Stewart vs. The State,* 2 *H. & G.,* 119.   This case fulfils these conditions, and the inferior court was, therefore, authorized to treat the contract as a *concessum.*

· But it is not necessary to depend upon this position.   The court will observe that the appellant in his second and third prayers, *which were granted by the inferior court,* relied upon the very contract in question, *as a fact in the cause,* (the existence of which he clearly assumes,) to defeat the action of the appellee.   In these two prayers his ground of defence is, that the appellee had not complied with the contract made with the appellant.   Surely then he was not prejudiced by the instruction of the court, which if it did assume the existence of the contract, assumed it only by reason of the concession of the fact in the instruction asked by the appellant, it being a fact which, the action being on the common counts, was necessary to the support of the defence of the appellee. Under such circumstances the Court of Appeals will not reverse the judgment of the inferior court.   *Union Bank vs. Planters Bank,* 9 *G. & J.,* 461.   *Greenway vs. Turner,* 4 *Md. Rep.,* 296.   *Balto. & Ohio R. R. Co. vs. Resley,* 14 *Md. Rep.,* 424.

There *was* evidence to sustain the appellee's second prayer. The record shows that Spedden was then city commissioner. The arch in question was intended to support the bed of Eager street, where it crossed the race of the defendant.   It was the right 'and duty of the city commissioner to contract for such a bridge, as would safely span this race, and afford a

sure bed for this street. *Act of* 1838, *ch.* 226, *sec.* 1. *Revised Ordinances of* 1858, *No.* 12, *sec.* 2. He had made a contract, which in his judgment secured this result, when the defendant came to him, and asked for the money appropriated by the city for this arch, and for leave to have the arch built under his supervision, in order that he might have it well built. The City Commissioner assented, only asking that Coburn might be employed to build it, as he had contracted with him. Now this arch was a part of a public highway, which was by the charter of the city exclusively under the control of the city authorities, upon whom the law imposed the obligation of making that highway safe and traversable. Whoever voluntarily assumed the duty imposed on the city by law, subjected himself to the same obligation. Though contracting with the city, Denmead became by his agreement with the city, an agent, no less than a contractor, and by assuming, as agent, to execute a work which the city was bound under the law to execute, he must be understood to have assumed that he would execute it according to the requirements of the law of the locality in which it was executed. That law required, as we have said, that the highway referred to in his contract should be safe and traversable. And had the city, or its agent so executed this work, as not to ensure this result, the corporation would have been subject to indictment. The person practically substituted by Denmead in this agency, was at liberty to regard the legal duty of the city and of Denmead, in relation to this highway, as an element in his contract. *Owings vs. Hull,* 9 *Pet.,* 626, 627. In this case that person looked, evidently, as he had a right to look, into the demands made on him by the city, in the contract for the same work, previously entered into, to ascertain what were the necessary parts of *the* stone arch which he had agreed with Denmead to put up. He found that contract required wing-walls, and he put up wing-walls to the arch constructed under the contract entered into with Denmead. He found that contract required such an arch as would carry the dirt of the street, and he therefore added to the supports of the arch, built under the contract with Den-

mead, such additional material as in his judgment was ne-
cessary to secure this arch and enable it to accomplish its
proper object.  If the jury were of opinion, from the testi-
mony, and it seems that they were, that these increased abut-
ments and these wing-walls added to the necessary security
of the arch, and properly aided the purpose of its construc-
tion, then the defendant was bound to pay for such additional
labor, whether he had directly authorized it or not, or
whether it was included in the contract made with Coburn
or not, because, as we have said, he had placed himself in
the position of the city by his voluntary act, and was, there-
fore, bound to perform the duties of the city to Eager street,
which is and was a common highway.   Whatever was done
by another to perform his obligation, was done for his advan-
tage.   Besides this, was not the jury authorized to find from
the fact, that this work was being done across the very race of
Denmead's mill, under a contract made with him, *that he
knew that it was being done*?   The Court of Appeals cannot
say that this circumstance afforded *no* evidence to the jury.
There was, moreover, evidence as to what was reasonable
compensation for this extra work, for it was supplied by Du-
shane by his measurements.

The third prayer of the appellee was one which the court
granted for the guidance of the jury in the event they should
not find that the appellee had complied with his contract, but
should find that materials belonging to the appellee had been
used by the appellant in building the arch under the contract
with Oliver.   It is evident from the verdict that the prayer
did not mislead the jury, and it must be construed by the
Court of Appeals, with this fact in view, and, therefore, in
favor of the construction given by the appellee.   The rule of
interpretation in case of an appeal is always in favor of that
construction which will maintain the judgment.

The appellee further contends that, the court below was right
in refusing to grant the defendant's fourth prayer.  This prayer
admits hypothetically that there was no defect of workman-
ship, plan or materials, and that the fall was occasioned by
the improper dumping of the earth by the city authorities, but

Denmead *vs.* Coburn.

denies the plaintiff's right to recover, if the injury was done while the arch was in course of construction, and before it was completed. Now, the claim of the plaintiff was made up of three distinct items, not necessarily connected with each other, and quite capable of being separated in the finding of the jury. 1st. The putting up of an arch of specified dimensions, for which payment was to be made at rates also specified in a written contract. 2nd. For extra work, for which compensation was sought upon a *quantum meruit.* 3rd. For materials belonging to the plaintiff, subsequently taken and used by the defendant, after the fall of the arch, also the subject of a *quantum meruit.* The vice, then, of the defendant's fourth prayer is, that while it rests upon a supposed obligation of the written contract, and, if proper, to be granted under any circumstances, would be applicable to the first item of the account only, being that arising under such contract, yet it restrains the jury, not only from finding such item in the plaintiff's favor, but also the other items for extra work and materials, with which the written contract has nothing to do. The court below, therefore, were right in refusing to grant it. And again, the court were right, because the fourth prayer makes the plaintiff the insurer against the consequences of the city contractors, when, in point of law, the duty of preventing their interference with the work devolved, not on the appellee, but on the appellant, who when he assumed the execution of a duty, which the law devolved on the corporation, was, by implication of law, bound to prevent the corporation, or its agents, from interfering with or preventing the work which he had agreed that the appellee should do. And indeed, if it appeared to the jury that the appellee was prevented from executing his contract by no fault of his own, but by the fault of the agents of the corporation, whose duties the appellant had undertaken to perform, the jury were at liberty to regard the contract of the appellee as completely executed by him. *Addison on Contracts,* 205; *Lancashire vs. Killingworth,* 1 *Ld. Raym.,* 686, and *same case* in 3 *Salk.,* 343.

In conclusion, it is insisted that the true law of this case, which affords substantial support to the appellee's prayers, and a substantial answer to the prayer of the appellant, is this: the appellant took the funds of the city and assumed the responsibility of contracting to build an arch to support a public highway, which arch the city was bound to construct. He placed himself, therefore, in the same position which the city would have occupied, had it contracted with Coburn to do this work. Could it be pretended, if, under these circumstances, the servants of the city had broken down the arch, by their carelessness, either in the course of its erection, or after its erection, that the city could have defended itself in a suit brought against it by the contractor, by the plea that the arch was broken down, if it was proved that its own servants had broken it? Surely it could not. And Denmead is in no better position. When he assumed a work that, under the law, ought to have been executed by contract with the city, he undertook, by inference of law, to prevent all hindrances from the city of the execution of the contract, which he had made, for himself in name, but, in reality, on its behalf. And if, in such case, the jury found that the work so done by the party contracting with Denmead, did not fail because of imperfect work, or bad material, but because of the fault of the agents of the very city whom Denmead represented, how could the jury be told to find that the person doing that work was not entitled to recover for what he had really done? Yet this is what the fourth prayer of the appellant asked.

The appellant has not only asked that judgment should be reversed in this case, but that a *procedendo* should be refused. The action is, as the court has seen, *on the common counts.* The witness for the appellant proves that some of the materials belonging to the appellee were used by Oliver, as the agent and contractor for the appellant, in rebuilding the arch. For these materials the appellee would, in any event be entitled to recover on the common counts.

LE GRAND, C. J., delivered the opinion of this court.

This is an action of *indebitatus assumpsit,* for work and

Denmead *vs.* Coburn

labor, brought by the appellee against the appellant, to re-
cover the sum of $963.71.    The principal facts of the case
may be thus stated:  The appellant had a mill race which
flowed under Eager street, in the city of Baltimore, at the
time when the city determined to fill up said street and ex-
tend it across Jones' Falls.   To enable it to do this effectively,
it was necessary the mill race of the appellant should be
arched over under the bed of the street, and accordingly the
proper officer of the city entered into a contract with the ap-
pellee to build the arch for a specified price.    Subsequently
an arrangement was entered into between the city commis-
sioner and the Messrs. Denmead, by which the sum agreed
to be paid to the appellee, for the building of the arch,
should be allowed to the Messrs. Denmead, they agree-
ing to have an arch placed over the mill race of a superior
character to the one contemplated in the original contract
with the appellee, and to be liable for any additional sum
which it might cost, it being, also, a part of the said agree-
ment that the appellee should do the work.    Because of this
understanding with the city commissioner, the agreement of
date 22nd November 1852, was entered into.    The evidence
shows that whilst the arch was in the course of construction,
a Mr. Crey, in fulfilment of a contract with the city, was en-
gaged in filling up and extending Eager street to the margin
of Jones' Falls, and, of course, over the race of the appel-
lant.    Over this contractor neither the appellant nor appellee
had any control, he being subject only to the city commis-
sioner.   Before the arch was completed that portion of it
which was done gave way.    This was owing, according to
the opinion of different witnesses, to different causes; in the
judgment of some of them, to the inferior character of the
materials used and workmanship; in that of others, to the
manner in which Crey, the contractor for filling up Eager
street, caused the earth used for that purpose to be "dumped"
down against the arch.    There was sufficient evidence to go
to the jury to sustain either theory.

    After the arch had fallen, the appellee was notified that he
had not fulfilled his contract, and subsequently it was rebuilt

by a Mr. Oliver, employed for that purpose by the Messrs. Denmead. In the rebuilding, according to the testimony of the builder, a small portion of the material which was in the former arch was used in the reconstruction. The claim of the appellee is for the building of the arch, extra work, and materials. During the progress of the work the appellee received on account, and in part payment, $150.

On the evidence, the plaintiff offered three prayers, which were granted, and the defendant four, the first three of which were granted, and the fourth rejected.

There is no special count in the declaration on the contract; if any recovery be had it must be, because the work under the contract was fully performed and accepted by the parties for whom it was done, or, that the contract was abandoned by the consent of the parties to it, or, that by some act of the party sought to be charged, the fulfilment of the contract was prevented. *There is no evidence in the record that the work contracted for was completed, nor of the abandonment of the contract, nor of any act of the defendant by which the plaintiff was interfered with in the prosecution of his work.* This being so, the authorities are clear, that there can be no recovery in this action for the work done on the arch. See *Ellicott vs. Peterson,* 4 *Md. Rep.,* 491. *The Chesapeake & Ohio Canal Co. vs. Knapp, and others,* 9 *Peters, S. C. Rep.,* 541.

From what we have said it follows, that we are of opinion the court erred in granting the first and second prayers of the plaintiff. It is clear, from all the evidence in the case, that the work fell down from one of two causes, either because of its inherent defectiveness, or because of the manner of "dumping" down, by the contractor Crey, of the earth against it, and whether it be the one or the other, the defendant is not liable. What was contracted for was an arch suitable to the purposes for which it was intended. If the plaintiff did not build such an one he did not do that which he had engaged to do. If his work was destroyed by the acts of Crey, without any fault of the defendant, then his remedy is against him, or against the city, if Crey was its

Denmead vs. Coburn.

agent, if he be entitled to any against any party, under the particular circumstances of his case, in regard to which, however, we deem it improper to express an opinion. *Delmonico vs. The Mayor, &c. of the City of New York*, 1 *Sandford's S. C. Rep.*, 226. The defendant had no control over Crey any more than over any other third party, and in justice should not be held responsible for his acts. We do not think there is sufficient evidence to justify the jury in inferring any assent, on the part of the defendant, to any extra work or departure from the terms of the contract. The plaintiff had agreed to build an arch of a particular character. It ought to be presumed that before he entered into the agreement he viewed the place where it was to be located, and that he calculated all the difficulties likely to be encountered, and, inasmuch as his contract bound him to do the thing contracted to be done, it imposed upon him the obligation to do all indispensable to that end. Apart from the form of the appellant's fourth prayer, from what has been remarked, it follows that we are of opinion it was correct. It asserted the true principle, but was properly rejected, because it assumed facts, which, according to former decisions of this and the late Court of Appeals, ought to have been found by the jury. The same reasoning applies to the plaintiff's third prayer. Whilst it correctly declares the right of the plaintiff to recover the value of any materials belonging to him which were used by Mr. Oliver in the rebuilding of the arch, it fails to require of the jury to find any such materials were used.

We reverse the judgment of the court below.

*Judgment reversed.*

(Decided January 19th, 1860.)