# LOHMULLER BUILDING COMPANY *vs.* FLORENCE S. BARRETT.

*Common Counts—Building Contract—Partial Non-performance—Acceptance of Work—Opinion Evidence—Condition of Building.*

Where there is a subsisting contract which has not been performed by the plaintiff, or the performance of which has not been waived or prevented by the defendant, the plaintiff cannot recover on the common counts in assumpsit for its part performance.                                        p. 625

That the owner of a house, which she had occupied for many years, continued to occupy it during the making of alterations thereon, and until the time of the trial of an action by the contractor, who made the alterations, to recover a balance under the contract, did not show a waiver by her of a partial non-

performance of the contract, so as to justify a recovery by the contractor under the common counts, it appearing that the owner continuously complained of such non-performance and that the contractor admitted the non-performance in sending its employees from time to time to remedy the defects.     p. 626

Nor was such waiver shown by the fact that, a mortgage on the property being overdue and pressed for settlement, the owner, about the time when the contract was supposed to have been completed, and while protesting that the work was not complete, executed a second mortgage, the proceeds of which were paid into the hands of the contractor, who was, under the contract, to finance the cost of the alterations, and out of which proceeds the contractor, after paying the cost of securing the loan and the prior mortgage, without any direction from the owner, applied the balance on account of the contract price.

p. 627

In an action by a contracting company, to recover a balance under a contract for the remodeling of a house, the president of the company, who was a member of the bar, and did not have actual supervision of the work, and who was not an expert nor constantly present during the progress of the work, was not qualified to answer a question whether the remodeling of the house was done in accordance with the specifications.     p. 628

In an action to recover the balance due on a contract for the remodeling of a house, where the defense was a failure to complete the work in accordance with the contract, that witnesses for defendant were allowed to testify as to the condition of the house more than a year after the completion of the work was not reversible error, the evidence showing the date of the doing of the work and the time of the inspection of the house by the witnesses, and the defects testified to by them having been a continuing cause of complaint and communicated to the plaintiff.                                               p. 629

*Decided January 13th, 1925.*

Appeal from the Court of Common Pleas of Baltimore City (AMBLER, J.).

Action by the Lohmuller Building Company against Florence S. Barrett.  From a judgment for defendant, plaintiff appeals.  Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE and WALSH, JJ.

*Guy B. Brown,* with whom was *John W. Lohmuller* on the brief, for the appellant.

*William H. Surratt,* with whom was *Paul R. Hassencamp* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

On May 14th, 1923, the Lohmuller Building Company, of Baltimore City, the appellant, brought suit in the Court of Common Pleas of Baltimore City against the appellee here, defendant below, Florence S. Barrett, under the Speedy Judgment Act applicable to Baltimore City, for the sum of $2,103.48.  The declaration contained the common counts, and the account accompanying the declaration showed that the sum claimed was for balance due for repairs and work incident to the remodeling of a house located on Raynor Avenue in the City of Baltimore, known as No. 2827 Raynor Avenue.  The agreement to remodel the house was in writing, signed by the appellant and appellee as contracting parties, and was as follows:

"The Lohmuller Building Company,
"Per John W. Lohmuller, Pres.
"Specifications for Alterations to Residence of Mrs.
Barrett, 2827 Raynor Avenue.

"Carpenter Work—Repair front and rear porch, fix front cellar window, partition off room on third floor and first floor for bath and cut middle room on second floor into two rooms.  Small hall on second and third floor to be removed.

"Plastering—Plaster new partition and point up where old plaster is damaged by repairs with two

coats of plaster consisting of a brown and skim coat, or cover same with sheet rock.

"Plumbing—Install one complete bathroom on first floor, and one complete bathroom on the third floor, and one sink and drain board on third floor. Fixtures to consist of following: 5-ft. enamel bathtub, 18x20, enamel lavatory roll rim. Low down porcelain closet combination with mahogany seat, 18x24 enamel sink and 18-in. drain board. Run gas line for kitchens for range.

"Painting—Paint entire home inside and out with two coats of paint of Lewis or Eagle lead and pure linseed oil.

"Papering—Entire inside of home except first floor kitchen and bathroom ceilings to be papered with good quality wall paper selected by owner not to exceed in cost ($150.00) one hundred and fifty dollars.

"Electric Wiring—Wire entire home for electricity in accordance with city code.

"Electric Fixtures—Install a neat design of electric fixtures in each room.

"Heating—Install one pipeless furnace of size sufficient to give heat to entire home.

"Sheet Metal—Repair spouting and gutter where necessary.

"Roof—Cover roof with two coats of Crescent roofing surfacer.

"Cementing—Cement cellar with cinder concrete, using ashes that have been accumulated in cellar now.

"Cleaning Up—On completion clean up all rubbish and waste accumulation during repairs and leave premises free from rubbish due to construction work.

"Terms—The work herein represented financed by securing mortgages to cover cost of repairs and release of mortgage now existing on property. Cost of financing same to be paid for by owner. Payment on mortgages not to exceed fifty ($50) dollars per month. The Lohmuller Building Co. undertakes to negotiate and secure mortgages in this clause mentioned, and that the mortgages to be secured shall be sufficient to cover the work provided for in this contract, the re-

lease of the present mortgage on the property, and all expenses incident to the new mortgage."

Witness then read a paper attached to the contract, which is as follows:

October 10, 1922.

"To removing back stairway and building steps to back from second floor down. Cost to be one hundred dollars added to contract price.

"Lohmuller Bldg. Co.,

"Accepted:                    G. B. Lohmuller, Sec'y.

"Florence S. Barrett."

The case was tried before a jury and resulted in a verdict and judgment for the defendant. During the progress of the trial there was reserved by the appellant four bills of exception, three to the rulings of the court on the evidence and the fourth to the action of the court in its rulings upon the prayers. The facts as disclosed by the record are substantially these: That Florence S. Barrett, the appellee, was the owner of the house located as stated, the same being an old three-story brick house which at the time the contract was entered into was subject to a mortgage of some $400 or $500 held by the Waldorf Building Association, the payments on this mortgage being in arrears and the building association demanding payment under threat of foreclosure; that Mrs. Barrett had no money but was anxious to have the property remodeled so as to provide three apartments which could be separately rented, thereby increasing the revenue which she might receive from the property; that she was living in this house and continued to live there during the time in which it was remodeled and subsequently occupying the apartment on the first floor and renting those on the second and third floors; that having no money and wishing to remodel the property, she wrote a letter to Mr. Lohmuller, and he or his brother called upon the appellee and after negotiations agreed to remodel the property and also finance the cost of doing so; that Mrs. Barrett was not to put up any cash, but the Lohmuller Building Company undertook, in addition to doing

the work, to finance it, and the proposal of the company was reduced to writing and submitted to Mrs. Barrett, and by her to her counsel, who required the Lohmuller Building Company to prepare specifications in detail showing what work was to be done.

These negotiations culminated in the contract as hereinbefore set forth, the contract price, as agreed, being $3,025 and the terms of payment being as contained in the contract:

"The work herein represented financed by securing mortgages to cover cost of repairs and release of mortgage now existing on property. Cost of financing same to be paid for by owner. Payment on mortgages not to exceed fifty ($50) dollars per month. The Lohmuller Building Co. undertakes to negotiate and secure mortgages in this clause mentioned, and that the mortgages to be secured shall be sufficient to cover the work provided for in this contract, the release of the present mortgage on the property, and all expenses incident to the new mortgage."

This contract was dated September 14, 1922, and subsequently, on October 10, 1922, there was an addition made to the contract, in writing, providing for the removing of the back stairway and building steps on the back from the second floor down, the additional cost of which was $100, to be added to the contract price. Among the specifications provided for in the contract was one that the appellant should install a pipeless furnace "of size sufficient to give heat to entire home." The work under the contract was started about the latter part of September, 1922, and was supposed to be completed about the latter part of December of the same year. During the progress of the work, from the beginning and down to the time of the trial in the lower court, numerous complaints were made by the appellee, either directly or through her counsel, that the work being done and apparently completed was most unsatisfactory, and not in accordance with the terms of the contract or specifications, this being particularly true in respect to the heating plant, and in the

winter of 1922-1923 the appellee was unable to keep tenants in the property by reason of the fact that she was unable to heat it, and she was therefore obliged to reduce the rent and make allowance to the tenants for their expense in heating their own apartments. In response to these complaints the appellant sent various workmen back to the property a number of times to do additional work on the contract which they were supposed to complete, this appearing to be true of the paper-hanging, the spouting and guttering on the property, leaking roof, and the pipeless furnace; these various endeavors, to remedy the defects complained of, continuing to the date of trial in the court below. It appears that the defects, other than the lack of heat, were substantially remedied and either accepted or waived by the appellee. There was no payment made upon the contract price by the appellee, except that in December, 1922, the appellee, at the request of the appellant, executed a first mortgage on the property to the American Fire Insurance Company for the sum of $1,500, which sum was applied by the appellant to the settlement of the mortgage due the Waldorf Building Association, and, after deducting the expense incident to the new mortgage, the balance, amounting to $1,084.07, was applied by the appellant in part payment of the contract price, this being done without opportunity being afforded to the appellee or her counsel to indicate the use to which this balance was to be applied. The evidence does not leave room for doubt that the pipeless furnace never reasonably heated the premises and, in the opinion of a number of witnesses, including representatives of the appellant, the pipeless furnace installed could not be made to heat the entire house. The record further discloses that the appellant offered to remove the pipeless furnace and install a steam heating plant, if the appellee would pay the difference in the cost. This the appellee refused to do, and also refused to execute the second mortgage upon the property, by which it was proposed, according to the terms of the contract, to secure sufficient money to complete the payment for the alterations and repairs. Upon this

state of the case the appellant brought suit on the common counts and filed therewith the following account:

> "Florence S. Barrett to The Lohmuller Building Company, Dr.:
>
> | | |
> |---|---:|
> | "To agreed price for repairs | $3,025.00 |
> | Agreed price for extra work | 100.00 |
> | Insurance | 11.25 |
> | | $3,136.25 |
> | December 8th, credit | 1,084.07 |
> | | $2,052.18 |
> | "Interest on balance from Dec. 8 to May 8 | 51.30 |
> | "Total | $2,103.48" |

The contract was offered in evidence by the appellant. At the close of the testimony offered in behalf of the plaintiff and defendant, plaintiff offered four prayers and the defendant one prayer. The court granted the plaintiff's first prayer and refused its second, third and fourth prayers, and granted the prayer of the defendant. To the ruling of the court in refusing the plaintiff's second, third and fourth prayers and granting the defendant's prayer, the plaintiff excepted, and this action constitutes the fourth bill of exception, which we will first consider. The plaintiff's second and fourth prayers were predicated upon the theory that there had been a substantial compliance with the written contract and that the work had been accepted by the defendant, as evidenced by her occupation of the property for more than a year after the work had been done. The plaintiff's third prayer had to do with the measure of damages in the event that the plaintiff's second and fourth prayers were granted, and therefore was properly rejected if the ruling of the court was correct in rejecting the plaintiff's second and fourth prayers. The prayers granted by the court, being the plaintiff's first prayer and the defendant's first prayer, were based upon the theory that in order for the plaintiff to recover the evidence must show a full performance of the written contract. It

will be seen that this suit was upon the common counts alone, and that the declaration contained no count declaring upon the contract.

It is the settled law of this State, as declared by our predecessors in numerous cases, that where there is a subsisting special contract which has not been performed by the plaintiff, or where its performance has not been waived or prevented by the defendant, the plaintiff cannot recover on the common counts in assumpsit for its part performance; the rule having been variously stated by this Court, beginning as far back as *Denmead* v. *Coburn,* 15 Md. 29, and continuing down to and including the case of *Balto. & O. R. Co.* v. *Carter,* 133 Md. 551, at page 556. In the last mentioned case the Court, speaking through Judge Burke, said: "Where a special contract has been put an end to by the defendant or its performance prevented by his acts, the plaintiff may recover under the common counts whatever may be due for so much of his contract as has been performed; but where there is a subsisting special contract which has not been performed by the plaintiff or where its performance has not been waived or prevented by the defendant, the plaintiff cannot recover on the common counts in assumpsit for its part performance." And in the case of *Pope* v. *King,* 108 Md., at page 46, we said: "In *Denmead* v. *Coburn,* 15 Md. 29, it is distinctly held, where there is a special contract the plaintiff cannot recover in an action of *indebitatus assumpsit* for work and labor unless the work under the contract was fully performed and accepted by the defendant, or the contract was abandoned by mutual consent, or the fulfilment of it prevented by some act of the defendant. *Ellicott* v. *Peterson,* 4 Md. 496; *Gill* v. *Vogeler,* 52 Md. 667. Like the case of *Denmead* v. *Coburn, supra,* there is no special count in the declaration on the contract in this case, and if any recovery be had it must be because the work under the contract was fully performed and accepted by the parties for whom it was done, or that the contract was abandoned by the consent of the parties to it, or that by some act of the party sought to

be charged the fulfillment of the contract was prevented. There is no evidence in the record to establish either of these theories, and under all of the authorities there could be no recovery in this form of action under the facts of the case."

As in the case last cited, there was no special count in the declaration in the present case, and if the plaintiff can recover in the form of action and under the pleadings in this case, he must do so by reason of having fully performed the special contract, or the evidence must show that the contract was either canceled and abandoned by mutual consent, the work accepted by the defendant in its uncompleted state, or that its completion was waived by the defendant or prevented by some act of the defendant.

There is no testimony in the record that the full performance by the plaintiff of the contract offered in evidence was prevented by any act of the appellee, or that the contract was abandoned by mutual consent of the parties, and there is no legally sufficient evidence to establish a waiver or acceptance by the defendant.

The appellant's second and fourth prayers were predicated upon the theory of waiver or acceptance, and the evidence relied upon to constitute sufficient ground to submit this theory to the jury was, first, the occupation of the premises by the appellee, and second, the payment of $1,084.07 on the contract price.

We cannot agree with this contention. The evidence shows that the appellee had been occupying the house for years before the alterations were begun, that she continued to so occupy it during the period of making the repairs and alterations and down to the time of the trial. The evidence further shows that while occupying this house the appellee continuously complained of the non-performance of the contract by the appellant, and the non-performance was admitted by the appellant in sending its employees from time to time to remedy the defects; and this continued up until the day of trial in the lower court. Under these circumstances the occupancy of the house does not constitute acceptance by the

.appellee. Under similar circumstances we distinctly so held in the case of *Pope* v. *King, supra.* In that case it was said: ·"It is settled that the use of a building under circumstances which negative the intention of the owner to accept the work under a contract does not constitute an acceptance of the ·work."

Neither do we think the partial payment constituted an acceptance by the appellee. There was an outstanding mortgage upon the property which was being pressed for settlement, being overdue and in default. In this situation the appellee executed a second mortgage in December, 1922, about the time when the contract was supposed to have been completed, and while protesting and complaining that the work had not been properly done and was not complete. The amount of the loan secured by the mortgage thus executed was $1,500, paid into the hands of the appellant, who, under the contract, was to finance the cost of remodeling, and out of which the appellant, after paying the cost of securing the loan and the prior mortgage, without any direction from the appellee, applied the balance on account of the contract price. There can be no doubt that this payment, under such circumstances, cannot be properly held to be such a payment as would indicate acceptance on the part of the appellee. The granted prayers submitted to the jury the only question under the pleadings in this case which was open to them, and upon which there was any evidence which they could consider, namely, the question of whether or not the contract had been fully completed. Upon this issue of fact the jury found for the defendant. In our opinion the lower court committed no error in its ruling upon the prayers.

The first exception to the ruling of the court on the evidence occurred during the testimony of John W. Lohmuller, who testified that he was a member of the bar and also the president of the Lohmuller Building Company, the plaintiff; that he had visited the premises No. 2827 Raynor Avenue during the course of the work and after the work was completed, on several occasions; that his company is and has

been since 1905 in the building business and that he has been connected with it all that time; that it had built a number of city blocks and had converted houses similar to Mrs. Barrett's· into apartments; whereupon the witness was then asked the following question: "Will you state whether or not the remodeling of the house of Mrs. Barrett was done in accordance with the contract and specifications." To this question; objection was interposed by the defendant and the objection sustained; whereupon the plaintiff excepted. The appellant claims that there was error in this ruling and bases his contention upon the case of *Iron Clad Mfg. Co. v. Stanfield,* 112 Md. 386. We do not think that the ruling in that case was in conflict with the ruling of the lower court here. The question there was: "Can you state whether or not, based on your experience as a builder, this building was put up in accordance with the written specifications, plans and the contract." This question was propounded to the plaintiff, who was the contractor in charge of the work and who had actual knowledge whether the work called for by the contract had been done, while in the present case the witness was a member of the bar and president of the contractor corporation, and did not have actual supervision of the construction, remodeling and repair. Unless he was an expert, and it is conceded that he was not, or had actual knowledge by reason of being constantly present during the progress of the work, we do not think he was qualified to answer the question propounded to him, and the objection thereto was properly sustained. And again, it is apparent that the refusal to allow him to answer this question, even should it have been held to be error, was not prejudicial and did not injure the plaintiff's· case, for the reason that Bernard Lohmuller, the brother of this witness and the active manager of the outside operations of the Lohmuller Building Company, superintending and supervising the construction work done by said company over a long period of time, was permitted, without objection, to testify that the work was done and completed according to the specifications set forth in the contract offered in evidence.

The two remaining exceptions were to the action of the court in permitting two witnesses produced on behalf of the defendant to testify to the condition of the paper on the walls and the condition of the partition of the bathroom and inside rooms of the house, these witnesses having inspected the premises a few days before the trial below. The inspection made by these two witnesses was more than a year after the work had been done and could have very little probative force. The weight to be given this testimony, if admissible at all, was for the jury to determine, the evidence showing the date at which the work was done and the time of inspection by these witnesses. While it is true that the length of time deprives this testimony of any great weight, yet in view of the fact that the record discloses that the defects testified to by these two witnesses were a continuing ground of complaint by the appellee and communicated to the appellant, we are unable to say that the admission of this evidence was reversible error. It follows from what we have said that the judgment of the lower court must be affirmed.

*Judgment affirmed, with costs.*