## LAUREL REALTY COMPANY *v.* HIMELFARB ET UX.

[No. 109, October Term, 1949.]

674

*Decided March 10, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON and HENDERSON, JJ.

*Albert F. Wheltle* and *Hilary W. Gans* for the appellant.

*Morris Rosenberg* and *Henry M. Decker, Jr.,* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court of Baltimore City awarding damages of $575 for breach of a contract relating to the construction and sale of a house. The bill was for specific performance, or in the alternative for damages. In a former appeal we sustained an order overruling a demurrer to the amended bill. *Laurel Realty Co. v. Himelfarb,* 191 Md. 462, 471, 62 A. 2d 263, 267. We held that the written contract filed with the bill on its face was not complete, and could properly be supplemented by proof of the oral agreements alleged in the bill; that the contract was not within the Statute of Frauds; and that the acceptance of the deed and payment of the purchase price did not effect a merger of the oral

agreements and render them null and void under the facts alleged, especially in view of the allegation that the appellees were denied an opportunity for inspection.

We said further: "It does not, however, follow that they can now compel the appellant to do all of the things which are required by the specifications. Some of the things left undone may have been visible from the outside, and as to these they will be held to have been waived when appellees accepted the deed. As to others, it may be impossible now to reconstruct the house, especially as to relaying floors, and the only reasonable remedy will be to provide compensation in the form of money damages. However, all of this is subject to proof, and the appellant may contend, and may be able to show, that it complied with all of the specifications. Some of the things complained of may be due to wear and tear, and others to unwise specifications. The deed was delivered on November 6, 1946, and the first bill of complaint was filed on October 28, 1947. While appellees allege that they 'seasonably and repeatedly' requested the appellant to complete the house properly, they must show that the things complained of were due to appellant's omissions, substitutions, or defective construction, and that they made demand on appellant promptly after discovery of the alleged breach of contract. Such questions of fact are for the Chancellor."

After an extended hearing, the chancellor found that the builder was obligated to deliver a house constructed in accordance with plans and check-list specifications filed with its application to the Federal Housing Administration for priorities under the Federal Reconversion Housing Program and Priority Regulation 33 applicable to veterans' housing. He found that the purchasers had an adequate opportunity to inspect the house while under construction, and availed themselves of it. The only denial of inspection was on the day of the settlement when the floors were freshly varnished. Before the settlement the house had been inspected and approved by a representative of the Veterans' Administration. After elimi-

nating a number of items which he held to have been waived, the Chancellor assessed damages as follows:

| | |
|---|---:|
| First floor joists | $ 30.00 |
| First floor | 425.00 |
| Second floor stair landing | 50.00 |
| Crack in living room ceiling | 50.00 |
| Unsanded woodwork | 10.00 |
| Missing handrail to cellar stairs | 10.00 |
| | $575.00 |

The appellant contends that the Chancellor should have dismissed the bill upon finding that there was no denial of inspection prior to the date of settlement. We do not agree. While we stressed this allegation in the previous appeal on demurrer, the decision did not rest wholly upon that allegation, as indicated by the cases cited, *Buckner v. Hesson,* 159 Md. 461, 150 A. 852; *Levin v. Cook,* 186 Md. 535, 47 A. 2d 505, and *Stevens v. Milestone,* 190 Md. 61, 57 A. 2d 292. The rule that the acceptance of a deed effects a merger of prior negotiations and agreements does not apply where there are collateral agreements not inconsistent with the deed, or where it appears that the execution of the deed is only a partial execution of the contract. *Rosenthal v. Heft,* 155 Md. 410, 418, 142 A. 598. We have expressly held there is no merger where the contract calls for the construction of a house in accordance with plans and specifications, on land to be conveyed. *Edison Realty Co. v. Bauernschub,* 191 Md. 451, 62 A. 2d 354; *Stevens v. Milestone, supra; Brummel v. Clifton Realty Co.,* 146 Md. 56, 125 A. 905. See also the cases cited in a note 84 A. L. R. 1008, 1023. The same principle was applied in *Levin v. Cook, supra,* where there was a conveyance of leasehold property with an express warranty as to the efficiency and good condition of a heating plant.

The mere fact that the owner takes possession after the building is erected would not in itself constitute a waiver of defects or acceptance of the contractor's workmanship. *Garbis v. Apatoff* 192 Md. 12, 19, 63 A. 2d

307, 310; *Hammaker v. Schleigh,* 157 Md. 652, 666, 147 A. 790, 65 A. L. R. 1285; *Lohmuller Bldg. Co. v. Barrett,* 146 Md. 617, 626, 127 A. 482. However, acceptance may bar recovery for known or discoverable defects. In Williston, Contracts, (Rev. Ed.) § 724, under the heading "Acceptance of defective performance under a contract for work or construction", it is said: "* * * if the defect in the work is or ought to be known, its acceptance will impose a duty to pay for it, and if no protest or complaint of the quality of the work is promptly made, will also discharge any right of damages for defects in the performance." See also Restatement, Contracts, § 298. Despite the opportunity for inspection, the acceptance of the deed, and the entry into possession, we hold that the Chancellor properly retained the bill for consideration of the alleged omissions, substitutions or defective construction, referred to in our previous opinion.

The appellant contends that the appellees are barred from specific performance or monetary damages because of their failure to prove the contract alleged in the bill, and their false statements in the bill as to their opportunity to inspect. While the bill relied upon the detailed plans and specifications filed with the Baltimore Bureau of Buildings, as a part of the contract, it also relied upon the identical, though less detailed, plans and specifications filed with the application for priorities to the F. H. A. The Chancellor found that the latter documents were part of the oral agreement. His finding was within the issue raised by the pleadings and was supported by substantial testimony, including that of Mr. Lange, the President of the appellant corporation. *Cf. Edison Realty Co. v. Bauernschub, supra, Stevens v. Milestone, supra,* and *Messick v. Smith,* 193 Md. 659, 69 A. 2d 478. See also *Helm v. Speith,* 298 Ky. 225, 182 S. W. 2d 635. While the Chancellor found against the appellees as to their opportunity to inspect, we think their failure to support that allegation is not fatal to their case. The appellees frankly admitted at the trial that they visited the premises after the house was sub-

stantially completed, but they deny that they saw, or could reasonably have been expected to see or appreciate, the alleged defects.

Finally, the appellant contends that the Chancellor was not justified in awarding damages for the items of defective sub-flooring. The other items are not contested in the brief, and we assume that the objections to them are abandoned. The appellant argues that the use of fibre board beneath the flooring on the first floor was expressly authorized in the specifications filed with the City, that the specifications filed with the F. H. A. were silent on the subject, that such material, according to the testimony, had been used in thousands of other houses, and that the proof shows that it cost more than wood. The argument, however, seems to be largely based upon a misconception of the Chancellor's finding.

The Chancellor said:" *The First Floor.* This is the most serious defect. Two causes have been suggested for the irregularity in the first floor. The nature of the sub-flooring is one, and the twisting or sagging of the joists is another. There was some testimony that Mr. Lange had promised a wooden subflooring. I do not think it is necessary to decide that particular question because the net result is that there is a defective floor, for which I will assess damages. * * * I think that the floor is irregular and also that it sags. I think also that it is probably due to a combination of green lumber in the joists and of soft material in the sub-flooring, the soft material being the fibre board which was variously described as 'Graylite' or 'Insulite'. It is almost impossible to reconcile the testimony as to cost, Mr. Onderdonk saying $700.00 and Mr. Lange $222.00. I am not certain, however, that this is the best measure, because I think it is unlikely that the floor will ever be taken up. In my opinion, the best measure of the damage is that provided by Mr. Heaphy, who testified for the plaintiff that the difference in the value of the house with proper flooring and its value with the improper flooring, which he found, would be a loss of about five

percent. I find, therefore, that $425.00 is a fair figure to assess as damages for that item."

We think there was substantial evidence to support the Chancellor's finding. The irregularities and sagging in the floor were not immediately apparent, but evidently developed gradually after the house was completed. *Cf. Garbis v. Apatoff, supra.* Under the circumstances we think there was no waiver of the latent defects, and that the complainants acted with reasonable diligence after their discovery. The measure of damages adopted was correct. *Iron Clad Manufacturing Co. v. Stanfield,* 112 Md. 360, 383, 76 A. 854. In any event the amount found was within the range of estimates of the cost of providing a proper floor.

*Decree affirmed, with costs.*