## HOLLOWAY, et ux. *v.* CHRYSLER CREDIT CORPORATION

[No. 318, September Term, 1967.]

*Decided October 9, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*James B. Gilbert* for appellants.

*Samuel F. Ianni* for appellee.

SINGLEY, J., delivered the opinion of the Court.

On 13 October 1965, Mr. and Mrs. Holloway purchased from a Virginia dealer a 1965 used Plymouth for $2481.85. They paid $200 in cash and financed the balance of $2281.85 under a conditional sales contract which called for 36 equal monthly installments of $80.94 each, commencing 15 November 1965. The sales contract was immediately assigned by the dealer to Chrysler Credit Corporation (Chrysler).

The contract required the Holloways to insure the automobile against "substantial risk of damage, destruction, or loss for so long as any amount remains unpaid * * *" and, in the event of the Holloways' failure to do so, permitted, but did not require, Chrysler to obtain such insurance and to add the premiums to the balance payable by the Holloways. On 5 November 1965, the Holloways' insurer notified Chrysler of its intention to cancel the insurance policy on the car on 19 November.

On 10 January 1966, after the Holloways had made two monthly payments, the Plymouth was demolished in an accident. When no further payments were made, Chrysler brought suit against the Holloways in the People's Court of Prince George's County for the amount due under the sales contract, after crediting payments, salvage proceeds and unearned finance charges. The Holloways filed a general issue plea and prayed a jury trial. The case was certified to the Circuit Court for Prince George's County for trial before a jury. At the conclusion of all the testimony, Chrysler's motion for a directed verdict for $2107.57 and costs was granted. The Holloways' motion for a new trial was denied, and judgment was entered in Chrysler's favor. This appeal followed.

The narrow question raised by the appeal is whether the Holloways' defense to the action could be proved under their general issue plea.

The rule of the Maryland cases is clear: in an action *ex contractu,* a claim arising out of an independent transaction (set-off) must be pleaded as a counterclaim, but one arising out of the same transaction (recoupment) need not be, and may be proved under the general issue plea, unless an affirmative judgment (*i.e.,* for an amount in excess of the plaintiff's claim) is sought.

Maryland Rule 314 a 1 authorizes "any party against whom a claim * * * has been asserted" to "plead as a counterclaim any claim he has against any opposing party." Although the words "recoupment" and "set-off" are not used, the Rule is broad enough to cover both, and the essential difference between them is preserved. *Eisenberg v. Air Conditioning, Inc.,* 225 Md. 324, 337, 170 A. 2d 743 (1961) ; *District Agency Co.*

*v. Suburban Delivery Service, Inc.,* 224 Md. 364, 167 A. 2d 874 (1961); 1 Poe, *Pleading and Practice* § 615 (5th ed. 1925).

We are mindful of the fact that the Maryland Rules were amended after *Eisenberg* and *District Agency* were decided. Prior to 15 September 1961, Rule 314 d 1 required that all counterclaims be asserted in separate and distinct pleadings. Rule 342 c 1 c, as a corollary, required the defense of set-off to be specially pleaded. In order to eliminate this apparent conflict, Rule 314 d 1 was amended so that a counterclaim, unless it brings in a new party, may be combined with a responsive pleading and need not be pleaded separately, and Rule 342 c 1 c was dropped. In the light of the well established distinction between recoupment and set-off we do not think that the rationale of the *Eisenberg* and the *District Agency* cases was altered by these changes in the Rules.

The defense on which the Holloways attempted to rely arose from the following circumstances. On 5 November 1965, the Holloways' insurer notified Chrysler of its intention to cancel the Holloways' policy on 19 November. On that day, Chrysler sent Mr. Holloway a form letter:

> "Dear Customer:
>
> Thank you for the opportunity of allowing us to extend our services in the financing of your automobile. We are happy to have you as a customer and are anxious to offer you the best possible service.
>
> We would be pleased to receive information of the required insurance coverage. It is necessary for the protection of your contract obligation and your own interest, that your car be insured against hazards of fire, theft and collision.
>
> *IMPORTANT*—IF YOU HAVE INSURANCE
>
> Please complete this section and instruct your agent to send us a copy of your policy with a loss payable endorsement in our favor.
>
> Insurance Co. .....................
> Insurance Agent ..................
> Address ..........................
> Telephone ........................

*IMPORTANT*—IF YOU.DO NOT HAVE
INSURANCE

Please sign and return this letter authorizing the re-
quired insurance be placed. The premium and custom-
ary carrying charge will be charged to your account
in one of the following plans. Please mark accord-
ingly:

( ) Add to the last payment of my contract
( ) Add to the monthly payment of my contract

Your courtesy and early accommodation [sic] will be
appreciated."

Holloway admitted receiving the letter. He testified with re-
spect to the letter:

"I received this letter from them, and in the meantime,
before I would sign it, this lady called and she ex-
plained it to me, that I didn't have insurance, and
that if I didn't have insurance I couldn't drive the car.
They wouldn't let me drive the car. That's the word
she gave me. And she said, 'Will you allow—if you
are not going to get the insurance, we will have to
take out the insurance on the car and you will have
to pay us on the 30 payments or either take it on the
last payment.' I told her, well, I would take it on the
last, you know, after I would pay for the car."

The "lady" referred to in Holloway's testimony had been
earlier identified as a Chrysler employee, Rachel Lewis, who
was called by neither side. Chrysler, apparently under the im-
pression that the Holloways were arranging for coverage else-
where, did not insure the car.

The Holloways argue that this was evidence of the existence
of an oral contract, under which Chrysler undertook to insure
the car and of the breach of that contract which gave rise to
a right of recovery. They then add that since the oral contract
arose out of the very transaction which was the subject of the
suit, the defense was one of recoupment, which is available to
them under their general issue plea.

Chrysler contended, and the lower court agreed, that the con-

ditional sales contract and the alleged oral contract grew out of two distinct transactions. Chrysler pointed out that the original parties to the sales contract were the Holloways and the Virginia dealer; that the sales contract contained the usual provision that it could only be modified in writing; and that it imposed on Chrysler no obligation to obtain insurance in the event the Holloways failed to do so.

Chrysler further contends that the alleged oral contract on which the Holloways attempted to rely was between the Holloways and Chrysler. If entered into, they say, it was as of a date approximately a month later than the sales contract, and since it purported to impose a duty on Chrysler for which no provision had been made in the sales contract, it would have had to be in writing to be regarded as a part of the original transaction.

> "When the abatement claimed by the defendant on the amount of the plaintiff's demand grows out of and forms part of the contract in which the claim of the plaintiff originated, the plea of set-off is not necessary, but the defense is open to the defendant under the general issue. Thus, in an action for work and labor, under the plea of never indebted or never promised, the defendant may show that the work was not done, *or without a plea of set-off,* that the work was improperly done, and its real value. But wherever the defense is a counter claim, arising out of an independent transaction, and constituting, of itself, a separate cause of action, for which the defendant might maintain a cross action at law against the plaintiff, it must be pleaded as a set-off. 1 Poe, *Pleading and Practice* § 615 at 643 (5th ed. 1925).

As we see it, if the Holloways can establish that there was an oral contract and that it had been breached, they would have a right of action against Chrysler which could have been asserted, even if the conditional sales contract had never been entered into. This was a defense of set-off arising out of an independent transaction, which could not be proved under their general issue plea.

Counsel for Chrysler formally conceded in his argument before us that our affirmance of the judgment of the lower court in this case would be without prejudice to such claim as the Holloways may assert against Chrysler for a breach of the alleged oral contract.

*Judgment affirmed; costs to be paid by appellant.*