E. J. SMITH CONSTRUCTION COMPANY, INC.
*v.* WILLIAM G. BURTON t/a William
G. Burton Nurseries

[No. 341, September Term, 1970.]

*Decided May 11, 1971.*

The cause was submitted on briefs to HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

Submitted by *William F. Hickey* for appellant.

Submitted by *Samuel Gordon, S. Michael Pincus* and *Gordon, Perlis & Pincus* for appellee.

SMITH, J., delivered the opinion of the Court.

Appellee, William G. Burton t/a William G. Burton Nurseries (Burton), sued appellant E. J. Smith Construction Company, Inc. (Smith) for sums said to be due for "services, labor and materials" rendered Smith on two different jobs. Smith counterclaimed, contending that

Burton's services were rendered "in a negligent unworkmanlike and unacceptable manner". The case was tried without a jury by Judge Turner in the Circuit Court for Queen Anne's County to which it had been removed. We shall affirm the judgment.

On appeal Smith assigns error on the entry of judgment against it, in the dismissal of its counterclaim, on the failure by the court to include the dismissal of the counterclaim in the written order appended to the memorandum opinion, and, finally, poses the question:

> "Did the Court commit material and prejudicial error detrimental to the defendant appellant in the area of admissibility of evidence by relaxing or waiving strict rules of evidence in the one instance and applying a stricture in another instance, but in all instances detrimental to the appellant defendant corporation?"

The trial judge in his opinion made the following findings of fact:

> "It appears to the Court that the following essential facts were established by a preponderance of the evidence to the satisfaction of the Court, who heard the case sitting as a jury:
>
> "(Facts below involve Friends House work Count One of Declaration)
>
> "1. That there was an oral agreement to do certain work at the Friends House for about $6,-400; that Mr. Burton agreed to substitute hydroseeding for the regular method of seeding, at no additional cost, so long as the yardage to be done remained the same. Mr. Burton had this work half done when requested by Defendant, E. J. Smith Construction Co., although it was November and Mr. Burton said 'it was a bad time to seed,' but Smith said, 'do it as he wanted to finish and get out.' Some seed did not come up, apparently it did not germinate as had been predicted by Plaintiff.

"2. That Plaintiff hydroseeded an area beyond that originally orally agreed upon; that Plaintiff, Mr. Burton, had attempted to obtain written plans for the Friends House job a year before the job was begun.

"3. That Defendant's attorney authorized extras of the value of $855 for which Plaintiff had not been paid.

"4. That Plaintiff did use a mixture of seed containing rye, fescue, and blue grass purchased from Bolgianos, a most reputable seedsman.

"5. That Plaintiff has billed Defendant since April 17, 1968 for the Friends job; had no complaints about the work done until he started asking for payment for the job.

"6. That the work was properly done by the plaintiff, who for 35 years had been engaged in this type work. He employed approximately 60 men in nursery work. He has 5 hydroseeders with men who know how to operate them.

"7. That Plaintiff has not been paid the balance due on the Friends House job in the amount of $7,703.08.

" (Facts below involve Blow-Pierce job Count Two of Declaration)

"1. That the total contract for the Blow-Pierce School job was $12,300, and that Plaintiff had been paid on account $4,797; that extra sod was supplied at a reasonable cost of $675.

"2. That the job was 95% complete and that Mr. Wood had at one point agreed to that proportion of completion of the job that had been billed for by Mr. Burton.

"3. That Mr. Wood for the Defendant had importuned Mr. Smith not to pay the $5,000 on this job; and that Mr. Wood said that the failure to complete the Blow-Pierce job was not the fault of Mr. Burton.

"4. That there is due and owing the sum of $7,563 on this job and that such amount is reasonable in the light of all the circumstances involved here as shown by the testimony and exhibits.

"It appears to the Court, from what Mr. E. J. Smith, Defendant, testified to, that he held back paying the Blow-Pierce job due to a dispute over the work on the Friends House job. Mr. Smith also promised in the course of these depositions, which were taken July 8, 1969, to furnish Mr. Burton an itemized statement of accounts between them within two weeks after the depositions were taken or about July 22, 1969. This was not done as promised and agreed by Defendant, Smith. Such conduct appears to this Court to be evading payment of the debt."

## (i)

## JUDGMENT AGAINST SMITH

As Judge McWilliams put it for the Court in *Blank v. Dubin*, 258 Md. 678, 267 A. 2d 165 (1970), in speaking of a trial judge in a non-jury case:

"He was the trier of facts; he saw the witnesses; he heard them testify. Rule 886 a requires us to give 'due regard' to his 'opportunity * * * to judge * * * [their] credibility.' We cannot say his election to believe Dubin was clearly erroneous. *Styka v. Styka*, 257 Md. 464 (1970)." *Id.* at 680-81.

A careful review of the record persuades us that there was evidence from which Judge Turner could properly have made the findings he made. Accordingly, there was no error.

(ii)

## DISMISSAL OF SMITH'S COUNTERCLAIM

On the issue of dismissal of the counterclaim Smith poses the question:

> "Did the Court clearly err in dismissing the Counter-claim of the defendant appellant corporation in light of the relative positions of the parties herein as shown by the testimony and in consideration of the necessity of applying premise of truth to allegations and resolving all reasonable inferences in favor of the party against whom the Motion to Dismiss was made?"

At the conclusion of the evidence of the defendant Smith—therefore, at the conclusion of the evidence of the counterplaintiff—and without presentation of evidence to rebut the counterclaim, the record reflects:

> "MR. GORDON: Your Honor, I would like to make a motion to the counter-claim at this point.
> "There is a counter-claim filed by the E. J. Smith Construction Company in which they claim that Mr. Burton acted in an unworkmanlike manner and an unacceptable manner, causing damage to the defendant and they ask for $12,000. Your Honor, I say they have proven nothing in their counter-claim, they have shown nothing.
> "THE COURT: The Court agrees with you, and the counter-claim will be dismissed."

The counterclaim here is in essence a contention by Smith that because of the manner of performance of these particular contracts by Burton that Smith not only owes Burton nothing under these contracts, but Burton is indebted to Smith.

In *Eisenberg v. Air Cond., Inc.*, 225 Md. 324, 170 A. 2d 743 (1961), on recoupment and set-off, the Court said:

> "In *District Agency Co. v. Suburban*, 224 Md. 364, 167 A. 2d 874 (1961), decided at this

term, Chief Judge Brune discussed fully the question of what must be pleaded specially as a set-off as distinguished from a recoupment. The essential conclusion drawn is that a claim growing out of an independent transaction (set-off) must be specially pleaded, while a claim arising out of the same transaction (recoupment) need not be, but may be proved under a general issue plea, unless an affirmative judgment is sought by the defendant. Rule 314 authorizes 'any party against whom a claim * * * has been asserted' to 'plead as a counterclaim any claim he has` against any opposing party.' Rule 342 c 1 (c) provides that a counterclaim must be specially pleaded if it seeks relief which is in excess of the amount sought by plaintiff or arises out of an independent transaction. Thus, as Judge Brune points out, although the words 'recoupment' and 'set-off' are not used, the rules are broad enough to cover both and the essential difference between them is preserved. See also [1] Poe, *Pleading and Practice,* 5th Ed., § 615; *Molesworth v. Schmidt,* 196 Md. 15, 75 A. 2d 100 (1950) ; *Simmons v. Haas,* 56 Md. 153 (1881)." *Id.* at 337.

More recently in *Holloway v. Chrysler Credit Corp.,* 251 Md. 65, 246 A. 2d 265 (1968), Judge Singley said for the Court:

"The rule of the Maryland cases is clear: in an action *ex contractu,* a claim arising out of an independent transaction (set-off) must be pleaded as a counterclaim, but one arising out of the same transaction (recoupment) need not be, and may be proved under the general issue plea, unless an affirmative judgment (*i.e.,* for an amount in excess of the plaintiff's claim) is sought.

"Maryland Rule 314 a 1 authorizes 'any party

against whom a claim * * * has been asserted' to 'plead as a counterclaim any claim he has against any opposing party.' Although the words 'recoupment' and 'set-off' are not used, the Rule is broad enough to cover both, and the essential difference between them is preserved. *Eisenberg v. Air Conditioning, Inc.,* 225 Md. 324, 337, 170 A. 2d 743 (1961) ; *District Agency Co. v. Suburban Delivery Service, Inc.,* 224 Md. 364, 167 A. 2d 874 (1961) ; 1 Poe, *Pleading and Practice* § 615 (5th ed. 1925).

"We are mindful of the fact that the Maryland Rules were amended after *Eisenberg* and *District Agency* were decided. Prior to 15 September 1961, Rule 314 d 1 required that all counterclaims be asserted in separate and distinct pleadings. Rule 342 c 1 c, as a corollary, required the defense of set-off to be specially pleaded. In order to eliminate this apparent conflict, Rule 314 d 1 was amended so that a counterclaim, unless it brings in a new party, may be combined with a responsive pleading and need not be pleaded separately, and Rule 342 c 1 c was dropped. In the light of the well established distinction between recoupment and set-off we do not think that the rationale of the *Eisenberg* and the *District Agency* cases was altered by these changes in the Rules." *Id.* at 66-67.

It thus follows in this case that the bases of the Smith counterclaim were provable under the general issue plea. These contentions were considered by Judge Turner and rejected when he found in favor of Burton. We have concluded that he did not err in that finding. Accordingly, if there were error in his action on the motion to dismiss the counterclaim, it was not prejudicial error.

### (iii)

### PROCEDURE ON MOTION TO DISMISS COUNTERCLAIM

The granting of the motion to dismiss the counterclaim is reflected in the docket entries of May 15, 1970, the day of trial. No written order relative to action taken at law in open court was necessary. It is true that the trial judge did not independently discuss the counterclaim in his memorandum opinion, but the requirements of Rule 18 c were met when in that opinion he rejected the defenses raised under the general issue plea, since, as we have already said, the counterclaim rested upon the same points.

### (iv)

### COURT'S RULINGS

Smith sees a certain unevenness in the conduct of the trial. It says:

> "In this case the court in an attempt to service justice as expeditiously as possible took the position of record that a certain amount of leniency would be applied in the receipt of evidence and testimony in this case. Presumably this was done to expedite and facilitate an obviously complex matter and allow the court to culminate the case within a reasonable period of time."

It claims the court permitted leading questions in preliminary matters by counsel for Burton. Then, when counsel for Burton prior to resting his case in chief had failed to offer into evidence an exhibit, he was permitted after the case in chief had been closed and the matter had not been opened up on cross-examination to offer the exhibit. Smith then contends that the court "took a relatively rigid position" as to certain of its evidence.

We have carefully examined the record. As Chief Judge Soboloff said for the Court in *Vocci v. Ambrosetti,* 201 Md. 475, 94 A. 2d 437 (1953):

"This court is always reluctant to reverse a judgment or decree for errors in rulings on questions of evidence, particularly when the case has been fully and carefully tried." *Id.* at 484.

If there were error in this case, we are not persuaded that there was prejudicial error.

*Judgment affirmed; appellant to pay the costs.*