## GILBERT CONSTRUCTION COMPANY, INC.

### *v.* GROSS ET AL.

[No. 73, October Term, 1956.]

404

*Decided March 1, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Daniel B. Leonard,* with whom were *G. Howlett Cobourn* and *Bowie, Burke & Leonard* on the brief, for the appellant.

*Frank H. Newell, III,* and *Harry E. Dyer, Jr.,* with whom was *James C. L. Anderson* on the brief, for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

This case arises from the fact that ductless furnaces installed in newly constructed suburban houses sold by the defendant (appellant) and purchased by the plaintiffs (appellees) were ill-adapted or inadequate for the purpose of heating these houses. The plaintiffs (sometimes referred to below as the "Purchasers") brought suit for breach of contract and recovered judgment for $8,000 apportioned at the rate of $250 per plaintiff, or $500 per house, since there were two purchasers of each house (a husband and wife in each instance).

The defendant (sometimes referred to below as the "Developer") entered into contracts for the sale of these houses to the plaintiffs between the dates of May 6, 1949 and March 21, 1950; and settlements were effected between December 1, 1949 and June 28, 1950. Protests with regard to the heating units seem to have been made with reasonable promptness after the various Purchasers took possession of their houses and discovered that the heating units did not operate satisfactorily in their homes, though suit was not filed until September 24, 1952.

A demurrer to the original declaration was sustained, and a demurrer to the amended declaration was overruled by the Circuit Court for Baltimore County. At the defendant's instance the case was later removed to Harford County for trial.

The contracts of sale were all in the same general form. Each provided for the sale of the leasehold interest under a 99-year lease (subject to an annual ground rent, to be created, of $75.00 to $81.00) in a then unimproved lot, which was to be improved by an asbestos shingle bungalow in accordance with plans and specifications attached to the contract. Most of

the purchase price was to be paid out of the proceeds of a F. H. A. mortgage loan, the contract was to be void and the Purchasers' deposit returned if such a mortgage could not be obtained within forty-five days from the date of execution of the contract, and settlement was to be made within six months after the same date.

The specifications referred to in each contract were on a 4-page F. H. A. form. This form contained the following paragraph:

"GENERAL.—The construction shall equal or exceed the applicable FHA. Minimum Construction Requirements and shall comply with applicable codes and regulations, zoning ordinances, restrictive covenants, and the exhibits submitted with the related application, as corrected by FHA. The highest of all the aforegoing shall govern. Each item of material or equipment shall equal or exceed that described or indicated. All parts shall be sound and all construction free of faults. All work shall be performed in a workmanlike manner, and in accordance with the best practice. For final acceptance, all buildings shall be complete and ready for occupancy, with all equipment installed, connected, and in operating condition, and all utility connections completed."

The specifications also called for the installation of the exact make and type of pipeless furnace which was actually installed, and the plaintiffs' answer to the defendant's demand for a bill of particulars admitted as much. The concluding statement in this answer was: "That the Plaintiffs relied upon the Defendant under the expressed warranty contained in the contract that the heating plants referred to would be properly installed as to location and that said heating plants would be sufficient to safely heat the properties in question."

The contract, which includes the specifications, does place an obligation on the seller to install the heating unit properly, but it does not contain any express warranty of the sufficiency of that unit to heat the house safely. The plaintiffs asserted an oral warranty to that effect, alleged to have been given by

an agent of the Developer. However, the alleged oral warranty was said to have been given prior to the execution of the contract.  Each contract not only does not contain any such warranty, but does contain a specific provision as to just what heating units were to be installed. It also contains an integration clause reading as follows: "This Contract contains the final and entire Agreement between the parties hereto, and neither they nor their Agents shall be bound by any terms, conditions or representations not herein written * * *." The alleged oral warranty falls squarely within the parol evidence rule, and no exception which might take it out of the operation of the rule is suggested. Accordingly, it cannot be given effect. See *Brummel v. Clifton Realty Co., Inc.,* 146 Md. 56, 125 A. 905; *Markoff v. Kreiner,* 180 Md. 150, 23 A. 2d 19; *Trotter v. Lewis,* 185 Md. 528, 45 A. 2d 329; *Kiser v. Eberly,* 200 Md. 242, 88 A. 2d 570.

Not only is there no express warranty, but in sales of real estate the rule is that there is no implied warranty. 4 *Williston, Contracts,* Rev. Ed., Sec. 926; *Berger v. Burkoff,* 200 Md. 561, 92 A. 2d 376. In the *Berger Case* this Court rejected a contention that "there was an implied warranty, not expressed, to furnish a structurally satisfactory house." See also *Milkton v. French,* 159 Md. 126, 150 A. 28. Cf. *Levin v. Cook,* 186 Md. 535, 47 A. 2d 505, where there was an express covenant that the heating system was in good condition.

There was thus no express warranty and no implied warranty. The Purchasers have not appealed from, and so far as appears, they did not even except to, an instruction included in the trial court's charge to the jury that "the defendant, having made no warranty as to the satisfactory performance of the heating units * * * is not responsible for any failure of said heating units to operate satisfactorily and that the defendant's only obligation was to install said heating units in a good and workmanlike manner."

Notwithstanding the absence of a warranty, the gravamen of the Purchasers' complaint, as the Developer points out, still is that a pipeless furnace should not have been put in houses of the design here involved. The testimony strongly supports the contention that this heating equipment was unsuitable for

these houses. It also shows the difficulties and dangers of injury resulting from the use of this equipment, particularly because of the presence of hot grilles in the narrow hallways of these houses where the Purchasers and members of their households, including children, were compelled to cross them and where some sustained burns as the result of falls on the grilles. In the absence, however, of any warranty, the unsuitability alone of these so-called floor furnaces is not sufficient to fasten liability on the Developer.

Questions remain as to whether or not these heating units were installed in a workmanlike manner, as to whether the Purchasers can enforce claims against the Developer if they were not, and as to the measure of damages.

The Developer contends that by the acceptance of deeds to their respective properties the Purchasers are barred from maintaining any action based upon alleged non-compliance with the terms of the contracts of sale. Although the general rule is that the acceptance of a deed conveying real estate gives rise to a *prima facie* presumption that it is an execution of the entire contract of sale and that the rights of the parties are to be determined by the deed, the acceptance of a deed does not effect a merger of collateral agreements where it appears that the deed is only a partial execution of the contract, and, for this reason, the presumption has been held inapplicable in a number of cases where a contract of sale called for the construction of a house and the conveyance of a lot with the completed house on it. *Kandalis v. Paul Pet Construction Co.*, 210 Md. 319, 123 A. 2d 345; *Laurel Realty Co. v. Himelfarb*, 194 Md. 672, 72 A. 2d 23; *Edison Realty Co. v. Bauernschub*, 191 Md. 451, 62 A. 2d 354; *Stevens v. Milestone*, 190 Md. 61, 57 A. 2d 292; *Levin v. Cook, supra.* See also *Rosenthal v. Heft*, 155 Md. 410, 142 A. 598.

The Developer also seeks to avoid any continued liability under the contract of sale on the ground that any defects in workmanship in the installation of the heating units were apparent when the Purchasers took possession and accepted their deeds, and that any claims which they might otherwise have are therefore barred. We think this contention is also untenable, since the alleged defects were not so obvious that the

Purchasers must have known of them. See *Barrie v. Abate,* 209 Md. 578, 121 A. 2d 862, where insufficient parging below ground level could not have been discovered without digging away the dirt around the foundation walls.

As we have already indicated, we do not think there was such delay on the part of the Purchasers in making known their complaints as to bar their suit. Mere acceptance of possession is not necessarily such a bar. *Laurel Realty Co. v. Himelfarb,* just cited above; *Garbis v. Apatoff,* 192 Md. 12, 63 A. 2d 307; *Lohmuller Building Co. v. Barrett,* 146 Md. 617, 127 A. 482.

The defendant was obligated under the contract of sale to install the heating unit "in a workmanlike manner and in accordance with the best practice." *Gaybis v. Palm,* 201 Md. 78, 93 A. 2d 269. We have already expressed the views that this obligation was not discharged by the Purchasers taking possession of the houses or by accepting deeds and that it was not waived or lost through delay.

The next question is whether or not the defendant discharged this obligation. There was much testimony as to whether the work relating to the heaters was or was not properly done. In this connection both operating and installation instructions issued by the manufacturer of the pipeless furnaces here involved were introduced in evidence. The operating instructions are of little relevance. The installation manual contains instructions or recommendations with regard to the use of heaters, the avoidance of doors swinging over the grille and the distance of the grille from the nearest wall. There was testimony indicating departures from the manufacturer's recommendations as to each of these, though it appears that the Developer made good the defects as to heaters for all of the Purchasers who would allow the carpenters access to their premises for the purpose, and some minor departures from the Baltimore County Building Code were also corrected. Any departure from the furnace manufacturer's recommendations as to distance from a wall was rather slight and was in some dispute, but lack of a free return flow of air seems to have contributed to overheating the grille. There was a dispute as to whether the vent temperature exceeded that approved by

the National Board of Fire Underwriters. We find it unnecessary to determine whether or not a letter dealing with this matter which was offered by the defendant was properly excluded. The evidence was clear that a door leading to the cellar in each house having a cellar (and all but one did) was so placed as to swing over the grille when opened. We think that the allegations of the amended declaration as to defective installation were sufficient as against the defendant's demurrer, and that the evidence with regard to such matters was sufficient to take the case to the jury as against the defendant's demurrer prayer on this subject.

The evidence points to the unfortunate but definite fact that the real trouble with these heaters is not a matter of either the method or the exact point of their installation in these houses, but that they were unsuitable for use in them. It seems that these heaters would not have given satisfactory results wherever they might have been placed in these houses. In a different location from that under the narrow passageway or hall, for example under the living room, a heater probably would have worked better from an operating point of view and might not have become overheated, but it would not have heated the house.

We think that the trial judge stated a correct abstract rule of law as to the measure of damages when he instructed the jury in substance that if it found a verdict for the plaintiffs, or any of them, the measure of damages would be the cost of repairing or remedying any defects due to the defendant's failure to install a heating unit in a good and workmanlike manner, if it were reasonable or practicable to correct such defects; but that if it were not reasonable or practicable to do so, then the measure of damages would be the difference between the fair market value of the house with the heating unit as actually installed and the fair market value of the house with the same heating unit installed in a good and workmanlike manner. *Laurel Realty Co. v. Himelfarb, supra,* 194 Md. at 679-680, 72 A. 2d at 25-26; *Iron Clad Mfg. Co. v. Stanfield,* 112 Md. 360, 383-4, 76 A. 854. There was no evidence, so far as we can discover, of the cost of repairing or remedying defects of installation of these heating units. Since, for

reasons already stated, the repair or correction of mere defects of installation would apparently have been almost, if not wholly, futile, there seems little reason to suppose that such repair or correction would have materially affected the market value of these houses; and certainly there is no evidence of what the difference in market value was or would have been.

In short, there is no evidence as to what damages may have been sustained as a result of the Developer's failure to install these heaters properly. The only evidence bearing on damages —and that which the jury evidently accepted—was the testimony of Mr. Piel, the Building Engineer for Baltimore County, to the effect that the sales value of a house "with a defective heating unit of this type installed" would be depreciated "around $500." The defendant objected to this testimony and moved that it be stricken. Its objections and motion were overruled. In this we think there was error. The witness was actually expressing an opinion as to damages which would have been appropriate, if the Purchasers had had a warranty of the sufficiency of the heating unit and were suing for the breach of it. It was not directed to the depreciation in value which might have been attributable to faulty installation.

In these circumstances, we think that the defendant's sixth prayer should have been granted. This prayer would have instructed the jury "that there is no evidence in this case legally sufficient to show that the plaintiffs or any of them sustained any actual damages as a result of any alleged failure of the defendant to properly install the heating units in question and that accordingly if the jury should return a verdict for the plaintiffs or any of them, the amount of such verdict shall be one cent and costs, as to each such plaintiff." As to the right to recover at least nominal damages for breach of contract, see *Duplex Envelope Co. v. Baltimore Post Co.*, 163 Md. 596, 606, 163 A. 688; *Wlodarek v. Thrift*, 178 Md. 453, 461, 13 A. 2d 774; 5 *Williston, Contracts,* Rev. Ed., § 1339 A.

In accordance with the above views, the judgment will be reversed, and pursuant to Rule 875 a of the Maryland Rules (which embodies, in part, Code, 1951, Article 5, Section 17) we shall enter judgment for the plaintiffs for damages of one

cent each and costs in the trial court, and will award costs in this Court to the appellant.

> *Judgment reversed, with costs in this Court to the appellant; and judgment for each of the plaintiffs for one cent and their costs in the trial court.*