BALTIMORE FEDERAL SAVINGS AND LOAN
ASSOCIATION *v.* GORDON ET UX.

[No. 282, September Term, 1973.]

*Decided June 21, 1974.*

The cause was submitted on brief to MURPHY, C. J., and
SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

Submitted by *Robert F. Vavrina* and *Callahan, Calwell &
Laudeman* for appellant.

No brief filed on behalf of appellees.

LEVINE, J., delivered the opinion of the Court.

This case commenced with a confessed judgment upon a
promissory note entered in favor of appellant, claiming to be

a holder in due course, against appellees, the purported makers. When appellees countered with a motion to vacate the judgment and a special plea denying the execution of the note — subsequently conceded by appellant to have been forged — appellant amended its declaration by adding these common counts: "For money payable by the defendants [appellees] to the plaintiff [appellant] for money lent by the plaintiff to the defendants," and "for money paid by the plaintiff for the defendants at their request."

The confessed judgment in the sum of $4,683.36, with interest, costs and an attorney's fee of $702.45, having been vacated because of the forgery, the case came on for trial before Judge Harry A. Cole, sitting without a jury in The Superior Court of Baltimore City. At the conclusion of the trial — after allowing a substantial sum under appellees' principal defense of recoupment, coupled with a credit for payments made by them — the court entered judgment for appellant in the sum of $310.97. From that action, this appeal is taken. We affirm.

The source of the dispute between these parties was a "proposal" [the contract] by Munson Fence Company, Inc. (Munson) of Laurel to perform certain "home-improvement" work on the Gordon residence located in the same community. The principal work to be performed under the contract was an application of aluminum siding. The contract, which was accepted by appellees, provided that "all work [was] to be completed in a workmanlike manner according to standard practices."

At or about the time the proposal was accepted, appellees also signed a credit application for a "property improvement loan" which specified $4400 — the amount to be paid Munson under the contract — as the "net amount of credit required." The credit application consisted of a printed form designed to be completed with the usual information that is required in such cases. It also provided, in printed language, that "if [the] credit application is approved, and if the loan is made, [Munson might sell the] obligation to Baltimore Federal Savings and Loan Association."

On April 15, 1969, appellant, having received the credit

application together with the contract and the forged note, delivered its check in the sum of $4400 to Munson, to whom it had been made payable. By this time, the work had been ostensibly completed. On the following day, appellant forwarded a payment book and questionnaire to appellees. The latter was completed by them and returned to appellant with these pertinent comments:

"1. Are you of the opinion that the work was incomplete or unsatisfactory?

"Yes. Both incomplete and unsatisfactory. Of course Munson keeps promising to finish it but that's all he's done is promise. . . . The work done on our home cost enough to have allowed the contractor to do a good job. They did not. It is a horrible mess and everytime we talk to Munson to try to get them to fix it they agree it is a mess but they just never get around to fixing it. . . ."

A witness produced by appellant testified that the latter paid the $4400 to Munson on the strength of the note, which was in the original principal sum of $6,755.28, without confirming that the work had been done. After making several payments, appellees refused to pay the balance. As a consequence of appellees' complaints concerning Munson's workmanship, the manager of appellant's home improvement loan department visited the Gordon residence on July 16, 1969, and on the following day wrote to Munson that "these people [appellees] certainly have every right to complain, the aluminum siding was placed on this property with no thought of good workmanship." He then proceeded to enumerate nine defects which he had observed. For some time thereafter, according to appellant's witness, efforts were made "to get [Munson] to do the work to the satisfaction of the customer."

That the work performed by Munson was not "completed in a workmanlike manner," as specified in the contract, was confirmed by two witnesses: a representative of the Maryland Home Improvement Commission and an expert in aluminum siding. The latter testified — over appellant's

objection, but without contradiction — that the work performed by Munson could not be repaired and that "the only way the job can be properly done is to remove the present siding, gutters, downspouts, soffit facia, and replace completely." He also testified what this would cost, and stated that none of the work or materials furnished by Munson was salvageable.

At the conclusion of the case, Judge Cole upheld appellant's theory of recovery under the common counts by finding that the $4400 ". . . was paid by the plaintiff for the benefit of the defendants . . . ." In awarding appellant a judgment of $310.97, he deducted from the $4400, the total sum of $4,089.03 by way of recoupment in favor of appellees. He arrived at this sum by adding the total payments made by appellees, $562.94, to the cost of correcting Munson's work, $3,526.09. Appellant attacks this decision on two grounds:

> 1. There having been no special plea to the common counts filed by appellees, the defense of recoupment should not have been allowed because it arose out of an independent transaction.
>
> 2. The trial court applied an incorrect measure of damages in upholding appellees' claim of defective performance.

### (1)

As we have intimated, the contention that appellees should not have been allowed to recoup their damages from appellant is bottomed on the premise ". . . that there were two separate and distinct transactions in the case at bar. One transaction was between [appellees] and Munson for the work to be performed per the 'Proposal'; the other being between [appellees] and [appellant] for the loan of money to finance the work to be performed."

We deem it important to stress that appellant's attack is narrowly confined. It does not question — and, therefore, we do not decide — whether appellees can assert defective performance by Munson, even if specially pleaded, as a

defense against appellant's suit for the money which, in effect, it had loaned to appellees by paying Munson. Nor does this issue appear to have surfaced in the trial court. We can only conclude, therefore, that even appellant regards itself as standing in the shoes of Munson with regard to performance under the contract. In view of this concession, the narrow question posited by appellant is a simple procedural one, whether appellees should not have been precluded from asserting their defense under the general issue plea. The rule controlling the issue here is set forth in 1 Poe, *Pleading and Practice*, § 615 at 643 (5th ed. 1925):

> "When the abatement claimed by the defendant on the amount of the plaintiff's demand grows out of and forms part of the contract in which the claim of the plaintiff originated, the plea of set-off is not necessary, but the defense is open to the defendant under the general issue. Thus, in an action for work and labor, under the plea of never indebted or never promised, the defendant may show that the work was not done, or without a plea of set-off, that the work was improperly done, and its real value. But wherever the defense is a counter claim, arising out of an independent transaction, and constituting, of itself, a separate cause of action, for which the defendant might maintain a cross action at law against the plaintiff, it must be pleaded as a set-off."

We have consistently quoted and followed that test with approval in our subsequent decisions. *Missler v. Anne Arundel County*, 271 Md. 70, 79, 314 A. 2d 451 (1974); *Holloway v. Chrysler Credit Corp.*, 251 Md. 65, 66-67, 246 A. 2d 265 (1968); *Eisenberg, Admin. v. Air Cond., Inc.*, 225 Md. 324, 337-38, 170 A. 2d 743 (1961); *District Agency Co. v. Suburban*, 224 Md. 364, 369-70, 167 A. 2d 874 (1961); *see E. J. Smith Constr. Co. v. Burton*, 262 Md. 62, 67-69, 277 A. 2d 84 (1971).

Appellant quarrels neither with the rule nor its applicability here. Rather, it contends that appellees' claim

of defective performance by Munson grew out of a transaction which was independent of the loan from appellant to appellees. It relies almost exclusively for this contention on *Holloway v. Chrysler Credit Corp., supra.* We regard that case as clearly distinguishable.

In *Holloway,* a used automobile was purchased from a dealer in Virginia, which assigned the conditional sales contract to Chrysler Credit Corporation. The contract required the purchasers to insure the automobile and, in the event of their failure to do so, permitted, but did not require, Chrysler to obtain the insurance and to add the premiums to the balance payable by the purchasers. Shortly thereafter, the purchasers' insurer canceled the insurance policy. Subsequently, the car was demolished in an accident, and when no further payments were made by the purchasers, Chrysler brought suit against them for the balance due. The purchasers filed a general issue plea, under which they sought to establish an oral undertaking by Chrysler to insure the car after the purchasers' insurer had given notice of intention to cancel the insurance policy. The purchasers maintained that since the oral contract arose out of the very transaction which was the subject of the suit, the defense was one of recoupment available to them under their general issue plea.

We rejected that argument, noting that there were two distinct transactions: the conditional sales contract between the purchasers and the Virginia car dealer; and the alleged oral agreement between the purchasers and Chrysler entered into a month later. Thus, we held that "[t]his was a defense of set-off arising out of an independent transaction, which could not be proved under their general issue plea." 251 Md. at 69.

We think there is a basic difference in the facts between *Holloway* and the case at bar. Here, the transaction between these parties was an integral part of the contract between appellees and Munson, a fact known to appellant from the very beginning. Indeed, as its own witness testified, it had supplied to Munson the credit application form which appellees signed. In actuality, as appellant manifestly

recognized, the money which it paid to Munson was the consideration for the latter's undertaking to perform the work.

Unquestionably, had Munson filed suit against appellees for a sum allegedly due under the contract, the defense of defective performance could have been raised against it under the general issue plea. 1 Poe, *Pleading and Practice, supra; see E. J. Smith Constr. Co. v. Burton, supra.* Appellant's argument, therefore, is hardly enhanced by its tacit concession at both the trial and appellate levels that in regard to performance under the contract, it stands in Munson's shoes. We hold that the transaction on which appellees rely for recoupment arose out of the same transaction as that which forms the basis for appellant's claim; and that they were not independent of each other. Hence, appellees' recoupment for defective performance, to the extent of appellant's claim, was properly presented under the general issue plea.

### (2)

In challenging the action taken by the trial judge, in allowing the recoupment, appellant argues that he applied an incorrect measure of damages when he awarded appellees the amount necessary to replace the defective aluminum siding job with a new one. It says the court should have awarded the difference between the fair market value of the house with the siding as actually installed and the fair market value with the siding installed in a good and workmanlike manner.

It relies heavily for this contention upon *Gilbert Const. Co. v. Gross*, 212 Md. 402, 129 A. 2d 518 (1957), where we said:

> "We think that the trial judge stated *a correct abstract rule of law* as to the measure of damages when he instructed the jury in substance that if it found a verdict for the plaintiffs, or any of them, the measure of damages would be the cost of repairing or remedying any defects due to the defendant's failure to install a heating unit in a

good and workmanlike manner, if it were reasonable or practicable to correct such defects; but that if it were not reasonable or practicable to do so, then the measure of damages would be the difference between the fair market value of the house with the heating unit as actually installed and the fair market value of the house with the same heating unit installed in a good and workmanlike manner...." 212 Md. at 411 (emphasis added).

But we also went on to say:

"... There was no evidence, so far as we can discover, of the cost of repairing or remedying defects of installation of these heating units. Since, for reasons already stated, the repair or correction of mere defects of installation would apparently have been almost, if not wholly, futile, *there seems little reason to suppose that such repair or correction would have materially affected the market value of these houses*; and certainly there is no evidence of what the difference in market value was or would have been." 212 Md. at 411-12 (emphasis added).

We concluded by entering a judgment for nominal damages due to the absence of any admissible evidence bearing on damages. Here, of course, the evidence of the cost of removing and replacing the siding was not only uncontradicted, but was admitted without objection.

Recently we indicated our approval of the complete replacement of a defectively installed heating and cooling system in *Archie Hooton et ux. v. Kenneth B. Mumaw Plumbing and Heating Co., Inc.*, 271 Md. 565, 318 A. 2d 514, 518-19 (1974) where we quoted our prior decision in *Correlli v. National*, 240 Md. 627, 214 A. 2d 919 (1965):

" '... The measure of damages in a case such as this, where the appellee seeks to enforce an express warranty, is *that amount of money which will render that which is guaranteed to be as warranted.*

From the testimony that some eighteen attempts have been made at repair by the appellant the trial court could have properly found that future attempts by appellant, at least, would be similarly ineffective and would not accomplish the purpose of the guarantee. Thus, it was proper to award money damages which would allow another firm to correct the roof's leakage instead of making the appellee suffer further inadequate repairs to its roof . . . .' " 318 A. 2d at 518-19 (emphasis added).

We also observed in *Hooton* that:

". . . The measure of damages which we apply in Maryland in such cases is substantially in accord with the weight of authority, 13 Am. Jur. 2d, *Building, Etc., Contracts* § 79 (1964); 25 C.J.S. *Damages* § 76 (1966); 5 Corbin, *Contracts* § 1089 (1964)." 318 A. 2d at 519.

Appellees' position parallels that of the property owners in those two cases. Here, while not even the semblance of an effort was made by Munson to correct the defective work, unlike the contractors in *Correlli* and *Hooton,* the evidence was uncontradicted in establishing that any attempts to do so would have been similarly futile; and that the only effective remedy was the removal and replacement of the aluminum siding. All this resulted from Munson's breach of its express warranty to perform its work in a "workmanlike manner according to standard practices"; therefore, nothing less than removal and replacement of the defective siding would suffice to "render that which [was] guaranteed to be as warranted."

In this case, it is even clearer than it might have been in *Gilbert, supra,* that any effort by the contractor to merely repair or correct its defective installation could not have materially affected the market value of appellees' house. Thus, the only appropriate remedy available to the trial judge was the one which he applied here, and which we sanctioned in *Hooton, supra.*

*Judgment affirmed; appellant to pay costs.*