WILLARD H. HINCHMAN ET. AL. *vs.* OTHO N. JOHN-
SON ET. AL.

*Estoppel to Claim Recoupment Against Amount of Promissory Note.*

If the purchaser of goods gives to the seller several months after the sale
a promissory note for the price, which is afterwards paid in part and
renewed, he cannot, in an action on the note, allege that the payee was,
at the time of its execution, indebted to him on account of a matter
growing out of the sale, and use such claim as a recoupment against
the amount due on the note.

*Decided November 14th, 1908.*

Appeal from the Circuit Court for Harford County (VAN
BIBBER, J.)

The cause was argued before Boyd, C. J., Briscoe, Pearce, Schmucker, Burke, Thomas, Worthington and Henry, JJ.

*John S. Young* for the appellants.

*Fred. R. Williams* and *Philip H. Close* (with whom was *Stevenson A. Williams* on the brief), for the appellees.

Boyd C. J., delivered the opinion of the Court.

The declaration in this case contains seven common counts, and three special counts on promissory notes given by the appellants to the appellees for $1,100, $225 and $212, respectively. The defendants (appellants) filed general issue pleas and also one of set-off—the set-off being for money alleged to be due by the plaintiffs to the defendants for some wood sold to them. As the granted prayers, both of the plaintiffs and defendants, submitted that question to the jury, it will be unnecessary to refer further to the set-off. The main question before us arises by reason of a claim of the defendants for recoupment, under the following circumstances. The appellees were the local agents at Perryman, Md., of the International Harvester Company of Amercia, and through a salesman sold to the appellants, in September 1903, a McCormick Husker and Shredder, with cutter head—the order providing that the purchasers were to give notes payable to the order of the Company for $162, due November 1st, 1903, and $163, due November 1st, 1904. When the notes were given the defendants desired longer credits than the contract provided for, which the appellees agreed to allow, and guaranteed that the change would be accepted by the Company or, if not, they would take the notes up themselves. It resulted in the appellants giving two notes, each for $150, dated October 19th, 1903, and payable on November 1st, 1904, and November 1st, 1905, respectively—the difference between the sum of those notes and the contract price not being explained in the record.

The appellants contend that when they purchased the husker and shredder O. N. Johnson, one of the appellees, agreed to

furnish and deliver a pea hulling attachment, to put it on the machine and fix it in running order, if notice was given him to do so, and that W. H. Hinchman gave him notice to do so in the fall of 1904 (over a year after the sale of the husker and shredder), but it was never furnished. They claim that by reason of the failure of the appellees to furnish the pea hulling attachment they lost a large number of bushels of cow peas, which they had reserved for seed, and they sought to recoup, to the extent of that loss. The appellants had large dealings with the appellees and on June 22nd, 1905, they gave them their note for $1,359.33, which included the first note due for the husker and shredder which the company had assigned to the appellees. That note was reduced and renewed in part from time to time, and the one for $1,100 sued on is for the balance still due on it. Included in the note for $212.63 is the other note given to the Harvester Company, which was also taken up by the appellees.

It is at least doubtful, to say the least, whether the claim of the appellants could properly be allowed by way of recoupment. The purchase of the husker and shredder was from The International Harvester Company, and the original notes given for the purchase money, which were afterwards included within the notes sued on, were payable to that company. The order for the husker and shredder was in writing, and there is not only nothing in it in reference to the pea hulling attachment, but the terms of the order forbid changes by such agents as the appellees were, unless approved by the company or its general agent, of which there is no evidence. It would seem, therefore, that the agreement with reference to the pea hulling attachment was with the appellees, and not with the company. If that be so, it is difficult to understand how the defendants could recoup against the claim for purchase money for the husker and shredder, as the sales of that and of the pea hulling attachment can scarcely be said to be the same transaction, when one contract was with the company and the other with the appellees.

In order to constitute a good defense by way of recoup-

ment, the cross-claim must arise out of, or in some way be connected with, the contract or transaction which constitntes the cause of action. 1 *Poe*, sec. 615; *State* v. *B. & O. R. R. Co.*, 34 Md. 374. If the suit for the purchase money had been brought by The Harvester Company, there could have been no defense by way of recoupment on account of the pea hulling attachment, unless it had contracted to furnish it, which the evidence does not show, and that being so, can it be said that the suit by the assignees of the company for the purchase money for the husker and shredder is on the same transaction as the sale of the pea hulling attachment made by the appellees? In one instance the appellees were agents of the company, in the other they acted for themselves, and it would be carrying the doctrine of recoupment very far to allow it under the circumstances of this case. But if we do concede that the claim of the defendants was sufficiently connected with the sale of the husker and shredder to permit them to recoup, and passing over the further question whether the damages claimed are of a character to be allowed by way of recoupment, under the general issue plea, we are of the opinion that it cannot be allowed by reason of the conduct of the appellants, and as that was the question argued and the ground apparently relied on by the Court below, we will base our decision on that.

The appellants cannot now in good faith question these notes. They not only gave their note for an amount which included the first one given for the husker and shredder eight or nine months after they claim they ordered the pea hulling attachment, but they paid considerably more than the first one for the purchase money, renewed the balance from time to time and as late as October 24th, 1906, sent a check for $100 and a new note for $1,000 to the appellees to take up the one for $1,100, which the appellees, however, declined to accept without security. They also sent a renewal for the one for $212.63, which was not accepted. It was not until just before this suit was brought, and after the appellees had refused to accept the renewals; that the appellants set up the claim for

damages which they now seek to have allowed against the notes. In *Adler* v. *Robert Portner Brewing Co.*, 65 Md. 27, this Court announced a rule which is so conclusive of this question that we will quote from it at some length. After referring to another branch of the case, the Court spoke of a number of facts, including the giving of notes for the purchase money after the defendant had possession of the machine in question for about eight months, and then said: "If there was a breach of warranty, he knew it at that time; or at least, he had the most ample opportunity of ascertaining it. * * * After eight months he seeks to obtain a further credit by giving notes. Some significance must be attributed to the giving of a note. In good faith it imports that the maker will pay it at maturity. If the defendant did not intend to pay these notes because of some matter which had then occurred; or if he intended to refuse payment in some contingency which he did not make known to his creditor, in either of these cases, he was contemplating a fraud. We can give to the defendant's conduct no interpretation consistent with good faith, except that he had no purpose of refusing to pay these notes at maturity. This clearly implied that he would make no objections to the amount claimed to be due as the purchase money of the machine. After this the defense arising from an alleged breach of warranty, or from any other cause, could not in good faith be set up in bar of a suit on this account. We think, therefore, that the Court would have been justified in refusing to submit such question to the jury." In that case the purchaser gave the seller his note after having had possession of the machine for about eight months, while in this case the note for $1,359.33 was given to the appellees nearly a year after the defendants claim they gave notice to have the pea huller delivered; then renewed it in part from time to time, and two years after the alleged notice asked for further renewals of that note and the one which included the other of the two notes given to the company for the purchase money.

. The appellants do not rely on a breach of warranty, but they do rely on an alleged breach of contract for the damages

which they now seek to recoup against the notes, and it will be observed that in the Adler case the language used is: "After this the defense arising from an alleged breach of warranty, *or from any other cause*, could not in good faith be set up in bar of a suit on this account." The opinion concluded by saying that the instruction given by the Court proposed the true inquiry to the jury. That was as follows: "If the jury find that after the delivery of the machinery, and after the expiration of a sufficient time to have become acquainted with its condition and quality, the defendant asked for an extension of time, and promised to pay the claim, the plaintiff is entitled to recover."

In the case of *Walker* v. *Pue*, 57 Md. 155, the same principle was in effect announced. That was a suit on a promissory note given for the purchase price of some fertilizer, called "Eureka," and the defendant claimed that there was a warranty that the Eureka "would keep up to its former standard in analysis and preparation for drilling"—the defendant having previously used that fertilizer. About a month after the Eureka was delivered, and when the defendant knew that it "was damp and filthy, and consequently difficult to drill," he gave a note for the purchase money, without saying anything about the condition of the fertilizer. The next summer he asked Walker, the company's agent, not to let the note go to protest and applied for an extension of time for payment. Walker told him he would arrange so that the note would not be protested but that he must apply to the company for an extension of time. Accordingly, a year after he gave the note, Pue wrote to the president of the company stating that he could not meet it at maturity, owing to a hail storm which had destroyed his wheat crop, and but for that it would have been paid. He testified that he knew the bad condition of the fertilizer when he gave the note, but made no objection to signing it and intended to pay it, but made up his mind not to do so when Walker refused an offer of compromise. The Court held that certain prayers of the plaintiff (Walker) should have been granted, including the *eighth* which was as follows:

"If the jury believe from the evidence, that after the defendant had ascertained the actual drillable condition of the 'Eureka' delivered, if they shall find such delivery, and after he had also ascertained the result of the application of the 'Eureka' so delivered to his land, he made an express promise to pay the note sued upon in this case, then they must find for the plaintiff, even although they believe the defendant received no benefit from the use of the said 'Eureka.''

Those cases fully sustain the Court below in granting the plaintiff's *second* prayer, that "Under the pleadings and evidence in this case the defendants are not entitled to recoup from the plaintiffs the alleged damage resulting from the failure of the defendants to receive the cow pea huller referred to in the evidence," and that being so, the omission to submit that question in the plaintiff's first prayer was proper. Of course it was not intended in the cases above cited, or by the Court below in this case, to hold that merely giving a note for purchase money, or a renewal of one, will under all circumstances be a waiver of a breach of warranty, or breach of contract. Sometimes a purchaser cannot well avoid giving a note, or obtaining a renewal of it, but when purchasers act as these did, and never intimate that they have any ground for damages for an alleged failure to comply with the contract, until about two years after the alleged breach—having in the meantime done acts which were utterly inconsistent with good faith and fair dealings, if they then believed they had the right to reduce the note by a claim for damages, and intended to assert that right, but did not tell the appellees—it would encourage fraud and unfair dealings to permit such a defense to notes which were given without objection, which had been paid in part and the balance from time to time renewed, and which the makers still sought to renew two weeks before this suit was brought. Promissory notes would be of little value if the makers are to be left free to thus repudiate them, in whole or in part, under such circumstances as are shown in this record, and we are of opinion that the defendants must be held to have waived their right to recoup these damages from the purchase money, if it ever existed.

So without deeming it necessary to say more in reference to the rulings on the prayers which were excepted to, and there are no other exceptions, we will affirm the judgment.

*Judgment affirmed, the appellants to pay the costs, above and below.*