56

RUPPERT ET AL. v. THE CUMBERLAND BREWING
COMPANY OF ALLEGANY COUNTY, MARYLAND,
INCORPORATED ET AL.

[No. 277, September Term, 1972.]

*Decided May 16, 1973.*

The cause was argued before MURPHY, C. J., and BARNES,
SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*John C. Sullivan* and *Jerry Moschetta* for appellants.

*J. Frederick Sharer,* with whom were *Wilson & Sharer,
Leonard E. Cohen* and *Frank, Bernstein, Conaway &
Goldman* on the brief, for the Brewery, part of appellees.
*William Walsh* for Local Union No. 265, another appellee.
*Marvin Poe Sklar* for the International Union, other
appellee.

SMITH, J., delivered the opinion of the Court.

Here we have the unusual situation of a corporation, The Cumberland Brewing Company of Allegany County, Maryland, Incorporated (the brewery); Local 265, International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America (the local); and the latter's parent union all being in agreement as to how a contract between the local and the brewery should be interpreted, but that interpretation not being one that satisfies appellants, Eugene E. Ruppert *et al.*, who are certain of the former employees of the brewery (the employees).

Operations ceased at the brewery on April 30, 1969. The employees contend that under the contract they are entitled to vacation pay. The contract period ran from May 1 to April 30, a custom that apparently had prevailed for a number of years. This particular contract covered the period from May 1, 1966, to April 30, 1969. It is conceded that the employees received a vacation during the period May 1, 1968, to April 30, 1969. It is their contention, however, that any vacation taken during that period was earned for service during the previous year.

The contract provides in pertinent part:

"SECTION 31. (a) All employees in the service of the respective firm for one year or longer shall be given two (2) weeks vacation with full pay per year. One year of service is defined as having accumulated two-thousand eighty (2080) hours. Further, a minimum of five hundred twenty (520) hours must be accumulated during the contract year, except in case of sickness or injury, to entitle the employee to a vacation. All employees with five (5) years or longer service with the respective plants, shall be exempt from the five hundred twenty (520) hours requirement.

\* \* \*

"(i) All employees in the service of the Cumberland Brewery for twenty (20) years or

longer, shall be given six (6) weeks vacation with full pay per year.

"Vacations must be taken and cannot be worked.

\* \* \*

"(l) Vacation shall be taken as approved by the Employer and Union Shop Committee. The vacation period shall begin May 1st, and the oldest men in point of seniority shall be given preference in the choice of dates within their department. The employee shall have until July 1st, of the contract year, to choose his vacation, thereafter he shall have only the choice of the weeks that are left in each contract year. No emergency vacation shall be granted unless approved by the Union Shop Committee.

\* \* \*

"(o) After the death of an employee entitled to receive a vacation and or wages, payment thereof shall be made to the beneficiary named by the employee under the Group Insurance Plan."

The employees sued the brewery, the local, and the parent union in assumpsit for their accrued vacation pay. All parties moved for summary judgment. The motion was granted and judgment was entered in favor of all the parties defendant.

In response to interrogatories, there were presented relevant sections of all collective bargaining agreements from May 1, 1942, up to the one in question. There were other interrogatories, admissions of relevant facts, and depositions before the trial judge.

Judge Getty filed a carefully reasoned opinion. He summarized the facts and the contentions of the parties:

"The Plaintiffs' theory of the case is that a vacation was earned one year and taken in the following year. The employer's theory is that the vacation is earned and taken in the same year.

"It is admitted that each of the Plaintiffs received a vacation during the Contract Year May 1, 1968, to April 30, 1969. Both Plaintiffs and Defendants have filed Motions for Summary Judgment and both sides agree that an interpretation of the pertinent provisions of the Collective Bargaining Agreement is a legal issue for the Court to determine. All parties concede that the Contract Year and the vacation year run from May 1 of one calendar year to April 30 of the following calendar year. The Defendants insist that the contract is clear and unambiguous and that by the terms of the Contract, Section 31, vacations are earned and taken during the same contract year. The Defendants rely on *Textile Workers Union of America v. Paris Fabric Mills,* [22 N. J. Super. 381,] 92 A. 2d 40 [(1952)], and *Treloar v. Steggeman,* [333 Mich. 166,] 52 N.W.2d 647 [(1952)]. The Plaintiffs rely on *Livestock Feeds v. Local Union 1634,* [221 Miss. 492,] 73 So. 2d 128 [(1954)]. The Defendants further alleged that if the contract provisions are ambiguous that the Court must then consider past practice of the parties to these collective bargaining agreements. Concededly no retiring employee ever received vacation allowance for the year following termination of employment. . . .

\* \* \*

"Vacations became a part of collective bargaining agreements between the employer herein and the union in 1942. Initially the requirement for en-titlement to a vacation was 'all employees in the service of the respective firms for one year or longer shall be given two weeks vacation with full pay per year.'

"In 1943 the vacation provision was added 'after death of an employee entitled to a vacation, payment shall be made in the same manner as any wages due at the time of death.' The vacation provisions continued without change in each

succeeding annual contract until 1950 when fifteen year employees became entitled to three weeks vacation. In 1951, for the first time, one year of service was defined as having accumulated 2,080 hours plus working 520 hours 'during this contract year' to entitle the employee to a vacation.

"In 1952 the date May 1 was designated as the beginning of the vacation period. In 1953 the wording of the work requirement was changed from 520 hours during 'this' contract year to during 'the' contract year. In 1954 ten years service entitled an employee to three weeks vacation. In 1956 twenty three years service entitled an employee to four weeks vacation. In 1957 the twenty three year requirement was reduced to 15 years for four weeks vacation. In 1959 employees with five years or longer service [became] exempt from the 520 hour requirement and the collective bargaining agreements became two year contracts. The vacation eligibility provisions have remained unchanged since 1959, except that the contract was for three years beginning in 1963 and the last contract, which is in dispute here, began May 1, 1966, and ended April 30, 1969, when the plant closed."

One of the parties states:

"This action arises under Sec. 301 of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C. Sec. 185. *Vaca v. Sipes*, 386 U. S. 171, [87 S. Ct. 903, 17 L.Ed.2d 842 (1967)]. The substantive law applicable to Sec. 301 suits whether brought in State or Federal Courts is federal law which the Courts have been directed to fashion from the policy of our national labor laws, although, State law, if compatible with the purpose of Sec. 301, may be resorted to in order to find the rule that will best effectuate the federal policy. *Textile Workers v. Lincoln Mills*, 353 U. S. 448, [77 S. Ct. 912, 1 L.Ed.2d

972 (1957)]; *Smith v. Evening News Assn.*, 371 U. S. 195, [83 S. Ct. 267, 9 L.Ed.2d 246 (1962)]."

The suit against the brewery is described as a "breach of contract" action while the suit against the unions is called a breach of duty of fair representation action.

We have been referred to and we have found no decisions arising under this act laying down different principles for contract interpretations than those frequently enunciated by this Court, namely, that the objective test for interpreting contracts is followed in Maryland; the application of this test limits the Court to the "four corners" of the contract in considering what the intention of the parties was; the cardinal rule in the construction and interpretation of contracts is that effect must be given to the intention of the parties unless it is inconsistent with some established principle of law; where a contract is plain and unambiguous there is no room for construction and it must be presumed that the parties meant what they expressed; and when the language of a contract is clear the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant, all of which was most recently discussed for the Court by Judge Levine with appropriate citation of cases in *The Kasten Construction Company, Inc. v. Rod Enterprises, Inc.*, 268 Md. 318, 301 A. 2d 12 (1973).

After reviewing a number of cases from other jurisdictions relative to vacations, none of which involved the exact set of facts here, Judge Getty said:

> "It is apparent from this case review that courts have given different interpretations to these vacation provisions in collective bargaining agreements. All have attempted, however, to find the intention of the parties from the terms of the contract.
>
> The present case is distinguishable from *Livestock Feeds, supra*, in that the employees in that case had done everything required of them to qualify for a vacation. The present case differs in

that a work requirement of 520 hours in the contract year was a condition of entitlement in addition to an accumulation of 2,080 hours prior service. In the year following termination of the contract, the employees had no status as employees and rendered no services. The vacation received in the final contract year, therefore, was all they were entitled to receive. If the present case had the usual requirement of working a certain number of days in the previous year, the Plaintiffs would be entitled to additional vacation, but the unique provision of working a certain number of hours in the contract year is the provision adopted by the parties and the Court must interpret that provision in determining the intention of the parties.

"The principal distinction between the cases cited and the present case is the additional requirement of 520 hours work in the contract year, in the present case, for those with less than five years' service. In drafting the contract the parties define a year of service as an accumulation of 2,080 hours; the next sentence states 'further, a minimum of 520 hours must be accumulated during the contract year except in cases of sickness or injury to entitle the employee to a vacation.' Webster gives as a meaning of the word 'further' 'lying beyond-additional.' It would thus appear that it was the intent of the parties that a vacation was not earned by a year's work alone, but to qualify for a vacation as of May 1, 1966, under the contract an employee needed a previous total of 2,080 hours plus 520 hours in the contract year. When that hourly requirement was met in 1966 a vacation was then earned and could be taken. The same requirement was necessary in each of the next two contract years. A year's service was the only condition of entitlement from 1942 when vacations began until 1951 when the 2,080 hours and 520 hour requirements were negotiated. Initially the 520 hours in the contract year applied to all employees,

not until 1959 was there any exemption for those with long service. Since the 520 hour provision applied to everyone when first adopted, the subsequent qualification of it could not reasonably be interpreted to entitle those employees with more than five year's service to an additional vacation. They were entitled to a vacation in the contract year, but not on the basis of having previously earned it, but having proved to be longtime, faithful workers they no longer had to perform additional hours work to qualify for a vacation. The vacation, however, was for the contract year May 1, 1966 to April 30, 1967, not for a previous year. This is admittedly the interpretation placed upon the contract by the parties for 20 years and the Court can interpret, but not rewrite the agreement. Most vacation provisions relate to work performed in a prior year; the contract here requires the work to be performed in the contract year as an additional factor of entitlement. Each employee received a vacation in each year covered by the collective bargaining agreement, nothing further was intended or owed to the Plaintiffs.

"If the contract provision were determined by the Court to be ambiguous the result would not be otherwise. Past practice and interpretation has uniformly been that no employee ever received a vacation in the year following termination of employment. Since no factual dispute is presented by past practice, this would also be properly disposed of by summary judgment."

We think Judge Getty had it just right.

*Judgment affirmed; appellants to pay the costs.*