SMITH *v.* JOHNS EASTERN COMPANY ET AL.

[No. 281, September Term, 1972.]

*Decided June 7, 1973.*

268

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH and LEVINE, JJ.

*Stanford H. Franklin,* with whom were *Harvey S. Levin* and *Mandel, Rocklin, Franklin & Drue* on the brief, for appellant and cross-appellee.

*John F. Linsenmeyer,* with whom were *Thomas G. Andrew, T. Benjamin Weston* and *Rollins, Smalkin, Weston & Andrew* on the brief, for appellees and cross-appellants.

SMITH, J., delivered the opinion of the Court.

In this case Grady Smith (Smith) is unhappy because the judgment entered against Johns Eastern Company, which is a successor to his former employer, Eastern Adjustment Company, Inc. (the employer), was not greater, while the employer and its successor company, possibly upon the theory that the best defense is an offense, attack the judgment as being too large. We shall affirm.

The employer was an independent insurance adjusting firm. On January 1, 1966, it hired Smith to manage its office

in Washington, D. C. He was not new to the business, having previously been employed for four years by an insurance adjusting firm as manager of its office at Harrisburg, Pennsylvania. The contract entered into between him and the employer at the inception of their relationship does not appear in the record, but we are informed that it was similar to that with his prior employer and also similar to the contract in the record between Smith and the employer dated April 1, 1969, but "for the term of two years beginning on the 1st day of February, 1969." The latter contract pertained to management of the Annandale, Virginia, office of the employer. On June 24, 1970, in accordance with a right granted to it under the contract, the employer terminated the contract prior to its expiration.

Smith sued the employer and its successor (which did not come into the picture until after the termination of Smith's employment), claiming that under his contract of employment he "was entitled to 40% of the net income derived after the deduction of expenses each calendar year he was so employed," and that "he was due 40% of the accounts receivable due as of June 1, 1970 plus 40% of the net income from billings of accounts receivable not yet sent out to the customers of the Defendant." Suit was filed November 3, 1971. Smith's delay in making demand was one of the peculiar circumstances of this case commented upon by the trial judge (Jenifer, J.). These circumstances have no bearing upon the outcome, however.

The case was tried without a jury. The trial judge determined that as of June 1, 1970, there were accounts receivable of $49,830.17; that "according to the testimony" about 10% of that sum would not be collectible, thus leaving a balance of $44,847.10 of accounts receivable as of June 1, 1970, that were collectible; and that "under the contract . . . the net profit allows for expenses in collecting those accounts . . . ." He then "deducted 10 percent for the collection," stating that "expense would amount to $4484.71," thereby allowing accounts receivable in the net amount of $40,362.39. He said "that these accounts were built up by Mr. Smith and that they were in fact a profit of the

corporation as of the time of termination of his employment," and that "[u]nder the contract he would be entitled to 40 percent of that amount of $40,362.39" or $16,144.95. Judge Jenifer further found "without any contradiction on the part of Mr. Smith, that at the time of termination of his employment he was indebted to his employer in the amount of $15,132.55." Subtraction of this indebtedness from the sum previously found to be due Smith produced a net sum of $1,012.40 due Smith for which judgment was entered. Smith contends (1) that the trial judge erred in his finding of fact as to the amount of net profits due Smith and (2) that the trial judge erred "in allowing the appellees deductions for bad debts and set-offs which had not been proven or specially pleaded." The third contention is that of the employer and its successor. They claim that there was no legally sufficient evidence that Smith was entitled to commissions on accounts receivable.

## I.

The short answer to the contention of Smith relative to the trial judge's computation of accounts receivable for the purpose of determining net profits is that there was evidence from which he could have reached the conclusion which he did reach. Accordingly, under Maryland Rule 886 we cannot say he was clearly in error.

## II.

### (a)

There was conflicting testimony as to the percentage of accounts receivable which would be collected. Smith "venture[d] to say that over 95 percent of [the receivables] have been collected," while a representative of the employer said he "would guess [they] had to either cancel or reduce anywhere from a third to 40 percent of the bills after [Smith's] departure."

In finding that 10% of the accounts receivable were not collectible the trial judge performed the function of a trier of fact in just the manner that juries do day in and day out.

Under Rule 886 his determination will not be disturbed since we cannot say that his conclusion is clearly in error.

(b)

Of the amounts which had previously been advanced to Smith by his employer deducted by the trial judge in making his final determination, $11,029.71 was the sum due from Smith to the employer by reason of advances during his earlier management of the Washington office under the contract of January 1, 1966. This sum did not arise under the contract of April 1, 1969, for the period beginning February 1, 1969. Smith says that the "two contracts are clearly divisible involving different locations, responsibilities and duties. Therefore, the Lower Court's allowance would be a set-off and not a recoupment."

The trial judge cited *E. J. Smith Constr. Co. v. Burton*, 262 Md. 62, 68-69, 277 A. 2d 84 (1971), and *Holloway v. Chrysler Credit Corp.*, 251 Md. 65, 66-67, 246 A. 2d 265 (1968), both of which cited *Eisenberg, Admin. v. Air Cond., Inc.*, 225 Md. 324, 337, 170 A. 2d 743 (1961), and *District Agency Co. v. Suburban Delivery Service, Inc.*, 224 Md. 364, 167 A. 2d 874 (1961), for the proposition that in an action *ex contractu* a claim arising out of the same transaction (recoupment) may be proved under the general issue plea, unless an affirmative judgment for an amount in excess of such claim is sought. He then said:

"Now, the contract of employment sued upon by Mr. Smith was with the same company and extended over a period of time. Whether or not you are justified in contending that when Mr. Smith was transferred to Virginia there was a separate transaction is immaterial, because suit was instituted after that transfer, after his discharge by the defendant; and the pleas of the defendants in this case were filed after said discharge, and any right of recoupment was available to the defendants. I am not convinced that merely because a man enters into a contract of employment with his employer, and then because of some change of

procedure by the employer, the employee is transferred to another office, then that it does not arise out of the same transaction."

In *Billingsley v. Kelly,* 261 Md. 116, 274 A. 2d 113 (1971), three men each owned a one-third interest in a corporation. The corporation was indebted to each for unpaid salary. It had an additional indebtedness to one of these men for personal funds he had expended on behalf of the corporation. The corporation executed four promissory notes, one note to each man for the sum due him for salary and a fourth note to the individual for the personal funds he had expended for the corporation. The note of each payee was endorsed by the other two persons as individual guarantors. The person who held two notes sued the other two individuals for the balance due on his notes. The trial judge, sitting without a jury, found the guarantors liable in the amount claimed, but also found that the plaintiff was liable to the defendants on their notes. Since the amount due them was more than that due the plaintiff, a judgment was entered for the defendants for costs. Judge Barnes said for the Court:

"Recoupment as opposed to set-off is allowable under the general issue plea when the claim arises from the same contract or same transaction as the plaintiff's claim and no affirmative relief is sought in excess of plaintiff's claim. Maryland Rule 342; *Holloway v. Chrysler Credit Corp.,* 251 Md. 65, 246 A. 2d 265 (1968); *Eisenberg Admin. v. Air Cond., Inc.,* 225 Md. 324, 170 A. 2d 743 (1961); *District Agency Co. v. Suburban Delivery Service, Inc.,* 224 Md. 364, 167 A. 2d 874 (1961); 2 Poe, *Pleading & Practice* (Sachs Ed. 1970), § 616. No excess relief was granted here but each note does constitute a separate and integral contract inasmuch as it is necessary to take each note individually and balance it against the validity and performance of the underlying consideration by the named payee in order to determine whether the Corporation as maker would have any defense or offsetting claim

for damages against each payee. The trial court determined that there was no such failure in the underlying consideration for the notes. *That each note constitutes a separate contract does not preclude use of recoupment among the notes if they can be shown to have arisen from the same transaction.* Recoupment was not allowed on independent contracts between the parties in *Molesworth v. Schmidt,* 196 Md. 15, 75 A. 2d 100 (1950) because, as the Court specifically stated, the defendant had failed to show a connection between the two contracts made between [the] same parties on different dates. . . . [T]he notes are tied together as an outgrowth of the same transaction." *Id.* at 121-22. (Emphasis added.)

The comment relative to "same transaction" was no inadvertence. In *Holloway* Judge Singley said for the Court:

"[A] claim arising out of an *independent transaction* (set-off) must be pleaded as a counterclaim, but one arising out of the *same transaction* (recoupment) need not be . . . ." *Id.* at 66. (Emphasis added.)

Similar language is found in *Eisenberg* at page 337 of 225 Md., which in turn is a quotation from the language used by Chief Judge Brune for the Court in *District Agency, supra,* 224 Md. at 369-370, quoting 1 Poe, *Pleading and Practice* § 615 (5th ed. Tiffany 1925). A like statement by Chief Judge Boyd for the Court is found in *Hinchman v. Johnson,* 108 Md. 661, 663-64, 71 A. 424 (1908). An annotation upon the subject of set-off and recoupment appears with *Milburn v. Guyther,* 8 Gill 92 (1849), in Brantly's edition published in 1885. At page 73 of that edition the author states:

"2. *Recoupment.* Recoupment is a species of common law set off for damages due the defendant, growing out of the same transaction. It is allowed both in actions *ex contractu* and actions *ex delicto,* to avoid circuity of action. *Lee vs. Rutledge,* 51 Md.

318. The doctrine of recoupment is comparatively modern, but it has become the settled law of this State. *Warfield vs. Booth,* 33 Md. 72, 73. The tendency of modern decisions has been to avoid circuity and multiplicity of actions, by allowing matters growing out of the same transaction to be given in evidence by way of defence instead of requiring a cross-action, when it can be done without a violation of principle or great inconvenience in practice. *Ibid.* Matter of defence by recoupment is raised under the general issue by way of evidence and is not usually the subject of plea. 51 Md. 318."

In *Warfield v. Booth,* 33 Md. 63 (1870), a physician sold his practice. He agreed to quit in favor of the purchaser who gave him notes as a part of the purchase price. The seller resumed practice when the notes were not paid. The purchaser then sued. Chief Judge Bartol after a review of the authorities stated that the damage claim by the plaintiff was for an alleged breach of contract on the part of the defendant in resuming his practice after having sold it to the plaintiff and agreeing to relinquish it in plaintiff's favor. He pointed out that $700 of the consideration remained unpaid and still due the defendant. Then he said for the Court:

"Why may not the defendant be allowed in this suit to set-off this balance in reduction of the plaintiff's claim? There would seem to be great injustice in denying to him such a defense." *Id.* at 73.

It was then allowed under the doctrine of recoupment.

In *Carroll v. Quynn,* 13 Md. 379 (1859), a plaintiff sued in assumpsit for the value of services rendered by him to an individual in his lifetime. The administrator "with a view to the reduction of the damages" sought to prove that during the time of the rendition of these services the plaintiff and his family had been supported and maintained by the decedent. Chief Judge LeGrand there said for our predecessors:

"In regard to a plea of set-off being unnecessary

in a case like the one now under consideration, the authorities are explicit; a few of them only need be referred to. A plea of set-off is only necessary, when the *abatement* in the amount claimed by the plaintiff, does *not* grow out of and *form part* of the contract, in which the claim of the plaintiff originated." *Id.* at 390-91. (Emphasis in original.)

Judge Jenifer here was the trier of fact. As such trier of fact he determined that the indebtedness of Smith to his employer at the time of the termination of Smith's employment in Washington was a part of the same transaction as that involved in Smith's suit. Under Rule 886 there was evidence from which he could have concluded that this was all one transaction. Having reached that conclusion, one to which Rule 886 is applicable, he was correct as a matter of law under the prior Maryland holdings in deducting this indebtedness from the sum he found to be due from the employer to Smith.

### III.

The contract between the employer and Smith provided in pertinent part:

"9. The employee is to receive for his services, after the expenses of the Annandale, Virginia office of the employer have been paid, a drawing account of Four Hundred Dollars ($400.00) per month.

"10. The employer is to have a drawing account from the operation of the Annandale, Virginia office of Four Hundred Dollars ($400.00) per month.

"11. From the balance or remainder of the net income from the operation of the Annandale, Virginia office the employee shall receive 40% of the net income after expenses, it being understood and agreed that if for any month the net income from the operation of said office, after paying expenses, is not equal to Eight Hundred Dollars ($800.00), and the net income from said office after

expenses for any subsequent month should exceed Eight Hundred Dollars ($800.00), then there is to be an accounting between the parties to the end that each shall receive from the operation of the Annandale, Virginia office a sum equal to their respective drawing accounts each month.

"12. Net profits, if any, shall be determined as of the close of the business day on December 31 of each year, providing the employee is at that time in the employment of the employer in the same capacity as is set forth in paragraph 1 of this contract. If there is no net profit at the close of any given year, any net loss shall be carried forward and charged against future net profits of the Annandale, Virginia Branch Office until such net losses shall have been fully extinguished, and the employee shall not be entitled to any commission on the net profits used to extinguish the net losses. Net profits, if any, shall be determined by the accountant employed by the employer, and commissions thereon, if any, shall be paid by the employer to the employee on or before the first day of April of the next succeeding year providing the employee is at that time in the employment of the employer in the same capacity as is set forth in paragraph 1 of this contract."

The employer and its successor contend that these contractual provisions "are plain and definite" and it was thus improper for the trial judge to have permitted Smith to recover commissions on accounts receivable.

In *Ruppert v. Cumberland Brewing Co.*, 269 Md. 56, 304 A. 2d 240 (1973), we said:

"[T]he objective test for interpreting contracts is followed in Maryland; the application of this test limits the Court to the 'four corners' of the contract in considering what the intention of the parties was; the cardinal rule in the construction and interpretation of contracts is that effect must be

given to the intention of the parties unless it is inconsistent with some established principle of law; where a contract is plain and unambiguous there is no room for construction and it must be presumed that the parties meant what they expressed; and when the language of a contract is clear the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant, all of which was most recently discussed for the Court by Judge Levine with appropriate citation of cases in *Kasten Constr. v. Rod Enterprises,* 268 Md. 318, 301 A. 2d 12 (1973)."

In this case an ambiguity exists as to how "net income after expenses" is to be computed. There was testimony that the employer operated on a cash rather than on an accrual basis. On the other hand, Smith testified that he was told that "profits . . . on the books" to the extent of 40% were to be his, that on at least three occasions he drew large sums, $2500, $5000, and $7500, that the $7500 withdrawal was immediately after he had had a conversation about profits that would be deferred because of a changing of billing, and that he was advised that anything he needed he might have "because [it was] in the barn," meaning "earned but unbilled." The trial judge said that "what [was] meant by profit [gave him] some concern." He as the trier of fact was obliged to make a determination here. We cannot say that he was clearly in error in the determination he made.

> *Judgment affirmed; appellant to pay the costs.*